(No. 21823.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, vs. JEROME J. DEWACHTER, Plaintiff in Error.

*Opinion filed October 21, 1933.*

STONE and DEYOUNG, JJ., specially concurring.

THOMAS P. SINNETT, and PETER R. INGELSON, for plaintiff in error.

OTTO KERNER, Attorney General, FRANCIS C. KING, State's Attorney, and J. J. NEIGER, (DAN H. McNEAL, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

Plaintiff in error (hereinafter called the defendant) was indicted in the circuit court of Rock Island county on charges of felonious embezzlement and fraudulent and

felonious conversion to his own use of funds of the Commercial Savings Bank. The indictment, containing twenty-six counts, was based upon paragraphs 208 and 209 of the Criminal Code. (Smith's Stat. 1931, pp. 1030-31.) Upon waiver of a jury he was tried before the court and found guilty upon the 1st, 2d, 4th, 5th, 7th, 8th, 10th, 11th, 13th, 14th, 16th, 17th, 19th, 20th, 22d, 23d, 25th and 26th counts. The other counts, which were dismissed on motion of the State's attorney, referred to the items therein mentioned as money belonging to the various depositors, and the counts upon which the defendant was found guilty alleged the moneys to belong to the Commercial Savings Bank.

The indictment consisted of eight sets of three counts each, and two general counts at the end. Each of the sets of three counts was based, as to the first of each set, upon paragraph 208 of the Criminal Code, alleging the money to belong to the bank, the second of each set upon paragraph 209, likewise alleging the money to belong to the bank, and the third of each set alleging the money to belong to the individual depositors who made the deposits. The 25th and 26th counts consolidated the previous counts and alleged the larceny by embezzlement of the total of the various sums mentioned in each of the eight preceding sets. The record presented to us consists of 868 pages, upon which thirty-one errors are assigned. In the view which we take of the case it will not be necessary to consider these errors, either seriatim or in detail.

The felonious embezzlement and conversion with which the defendant is charged is alleged to have occurred on April 27, 1929. The bank continued in operation after this date until the fall of 1931, when it was closed and audited by auditors for the State. Irregularities and discrepancies were thereupon discovered in something like 1500 out of a total of about 5000 savings accounts. A number of cases appeared in which credits to depositors as shown by their individual pass-books were not credited to them, as shown

by their separate ledger accounts in the bank. From this situation the auditors for the State drew the obvious inference that a great deal of the money deposited had been abstracted and embezzled by some employee or employees of the bank, and that the method was to abstract the money and secrete or destroy the corresponding deposit slips in order that the books of the bank might thus remain in proper balance. It will be noted that the indictment in this case charges the larceny by embezzlement of the funds in question to have occurred on April 27, 1929, approximately two and one-half years prior to the closing of the bank, and that it definitely charges the embezzlement of eight certain deposits, upon which the State relies for conviction, without specification of what the deposits consisted, whether currency, specie, checks or drafts.

The record shows the defendant to be of Belgian extraction, forty-six years old at the time of his conviction, of good prior reputation, and a man who had lived a frugal and industrious life entirely within his apparent means. The record is devoid of any evidence tracing or even attempting to trace directly to him the proceeds of any alleged fraudulent or felonious conversion or embezzlement. The evidence for the People consisted chiefly of certain bank records and pass-books and the expert interpretation of these records by the auditors. The several depositors involved identified their respective pass-books and gave evidence to the effect that they had made the deposits shown therein. These deposits were in some cases cash and in other cases checks or drafts. The principal witness for the State was Fred L. Legris, Jr. After qualifying as an expert accountant he testified to the usual course of business in this bank.

It appears plainly from the entire record that in this bank the course of business was as follows: A depositor wishing to make a deposit presented his pass-book and his money, checks or drafts which he wished to deposit, to

a receiving teller, one of whom was the defendant in this case. The teller would then make out a deposit slip showing the entire amount of the deposit but not its details. The amount of the deposit was thereupon entered in the pass-book of the depositor, constituting his only receipt. The deposit slip was then spurred upon a spindle on the teller's desk or work-table and the funds mingled with the general cash. It was the duty of another employee of the bank, once every day at some convenient time during that day, to remove these deposit slips, totalize them on an adding machine and return to the spindle the adding-machine slip. It is not entirely clear from the record whether the deposit slips themselves were returned to each individual teller with the adding-machine slip or not. It is entirely clear, however, that several employees of the bank had free access to these deposit slips. It also appears that some of the identical deposit slips representing the funds claimed to have been embezzled were found, after the bank closed, in a safety deposit box under the control of one Hanson, another teller of the bank. The defendant offered but was not permitted to prove that Hanson committed suicide the next day after the bank closed and that he was more than $10,000 short in his accounts. There is no evidence in the record as to how these slips got into Hanson's box.

We are of the opinion that, in view of the deposit slips having been found in Hanson's box, it was error for the trial court to refuse to accept the testimony as to Hanson's suicide and shortage. Whatever its weight might have been, it had a very clear bearing upon the issue involved, as it is always a competent line of defense to produce any evidence showing or tending to show that another, and not the accused, committed the crime. (*People* v. *Holtz,* 294 Ill. 143; *People* v. *White,* 333 id. 512.) It was entirely apparent from the record that Hanson had an opportunity to abstract the deposit slips in question. It was also shown that he made up the daily cash statement

and furnished the figures which went into the bank's general daily statement as the amount of cash on hand. The evidence should have been admitted, to be accorded whatever weight it might appear to be entitled to have.

The evidence further shows as to the course of business in the bank that the defendant was the one who posted the savings account ledger, and was therefore the one who did the physical work from which the incriminating omissions occurred. It further shows, however, that he did this posting not only from the original deposit slips on dull days when there was little to do, but also from a savings account journal which was prepared by another employee from the savings account slips on days when there was considerable business. This embezzlement is alleged to have occurred on April 27, 1929, which was Saturday and a busy day. It is uncontradicted that the defendant did not do the posting until the following Tuesday, and that when he did do it, it was from the savings account journal prepared by another employee. No witness for the State claimed to have any independent recollection of anything that happened on this particular day, and the uncontradicted testimony of the defendant is to the effect that he was never able to post Saturday's business until the following Tuesday because of Saturday and Monday both being busy days at the bank. The State proved a number of other instances in which deposits made by individual depositors were not credited on the savings account journal, but did not in any case prove any definite abstraction of funds, checks or drafts by the defendant.

For its proof of *corpus delicti* the State relies upon three exhibits—Nos. 9, 10 and 11. Of these exhibits Nos. 9 and 11 were prepared by the defendant, No. 9 being a statement of the daily cash position of the bank, which was admittedly written by him from figures furnished to him by Hanson rather than from his own knowledge, and No. 11, which was a statement of the daily condition of

the bank and in which the cash item was also furnished to him by Hanson. The witness Legris by his testimony furnished the theory upon which the case was tried for the State. That theory was that someone must have abstracted or embezzled the moneys mentioned in the indictment, because otherwise the cash position of the bank would have been "long." In other words, had the money been left in the bank there would have been too much cash on hand at the close of business to balance with the books as shown by the summaries of the various deposits. Legris was erroneously permitted to testify to his conclusion that "someone must have stolen the money" because the cash was not "long." Although the court struck out this testimony after it had been given, it must have adopted that theory in order to arrive at its conclusion of guilt. As above pointed out, there was no evidence produced and no effort made to show that the defendant ever actually had in his possession any of the money, checks or drafts represented by these various deposit slips, nor was there any evidence produced either showing or tending to show that any money was actually stolen from the bank except these bank records, indicating that there was no "long" position of the cash account on the night of April 27, 1929. It is also to be noted that the only evidence tending to show that there was no "long" position of cash at this time was the bank record, made up from information furnished by the recently deceased Hanson. There was no evidence that the defendant ever counted or personally verified the amount of cash on hand or had any first-hand information on the subject before making the book entries depended on by the State for conviction.

It is always the duty of the court to resolve the circumstances in evidence upon a theory of innocence rather than upon a theory of guilt, where it is reasonably possible to do so. There are so many different ways upon which these bank records may be interpreted upon a theory of

innocence so far as this particular indictment is concerned that we will not enumerate them. The very record upon which the People rely for conviction (People's exhibit 12) carries on its face an error of $187.54 under the heading "Over and short," which the auditor Legris said indicated an error at the time unaccounted for. Considering the complicated set of books which this bank kept, it would be an unfair assumption to say that the bare failure of the books to show a "long" position of cash amounted to proof, beyond a reasonable doubt, that this defendant had stolen the money.

Another serious defect in the case for the People is their failure to produce any evidence as to how the apparently purloined deposit slips happened to be in Hanson's box after his death. If we are to be asked to conclude that the defendant secreted the deposit slips and abstracted a sufficient sum of money to balance the "long" position of cash that would be thus created, we would have to go further and assume that in some way not shown by the evidence he placed these incriminating deposit slips in Hanson's safety deposit box. To thus base assumption upon assumption would be to do violence to the rules of criminal law.

To comment further on this record would be to needlessly and unreasonably prolong this opinion. We find that the State failed to prove the defendant guilty beyond a reasonable doubt.

The judgment of the circuit court is therefore reversed and the cause will be remanded.

*Reversed and remanded.*

STONE and DEYOUNG, JJ.: We concur in the judgment but not in all that is said in the opinion.