(No. 30836.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* JAMES R. SHEPPARD, Plaintiff in Error.

*Opinion filed January 19, 1949.*

ELMER N. HOLMGREN, and JULIAN C. RYER, both of Chicago, for plaintiff in error.

GEORGE F. BARRETT, Attorney General, of Springfield, and WILLIAM J. TUOHY, State's Attorney, of Chicago, (JOHN T. GALLAGHER, MELVIN S. REMBE, W. S. MIROSLAWSKI, and ARTHUR F. MANNING, all of Chicago, of counsel,) for the People.

Mr. JUSTICE DAILY delivered the opinion of the court:

Plaintiff in error, James R. Sheppard, was tried before the judge without a jury in the criminal court of Cook County and convicted of the crime of assault with intent to kill and murder William Leahy, and sentenced to the

penitentiary for a term of not less than three years nor more than five years. He prosecutes this writ of error.

Numerous errors have been assigned, all of which question the sufficiency of the evidence to support the judgment of conviction. It should be noted that we have at this term of court reviewed another judgment of conviction against plaintiff in error, wherein he was found guilty of assault with intent to kill one Draheim. (*People* v. *Sheppard; post,* 411.) Although the facts relating to that conviction are entirely unrelated to those of the present case, and plaintiff in error received a separate trial for both offenses, the errors assigned and the points and authorities cited in plaintiff in error's briefs filed in this court are almost to the word exactly similar in both cases. The facts in this case show that on the morning of February 3, 1948, plaintiff in error operated a hotel or boarding house on the upper floors of the premises located at 717 N. Clark Street in Chicago. About 4:30 A.M. of that morning he was sitting in his office on the second floor, apparently being up and about at that hour in his role of innkeeper, when, as a consequence of events to be related, he shot and seriously wounded the complainant, William Leahy, in the shoulder.

From Leahy's testimony it appears that he resided in a hotel at 417 N. Clark Street and was employed nights from 8:00 P.M. until 5:00 A.M. The night of February 2 and 3 was his night off. Having heard of a vacancy in plaintiff in error's hotel and wishing to move there, he visited the hotel at approximately 4:30 A.M. the morning of February 3 to inquire about the vacancy. When he got there he saw plaintiff in error sitting in his office, approached the door and said: "How are you, dad? Is that room still vacant?" He testified that plaintiff in error then jumped up and without a word reached for a rifle, shot the complainant in the shoulder, and began to utter incoherent remarks. Leahy then ran from the premises and immediately encountered a police sergeant from a nearby station to whom

he reported the shooting. Both returned to the hotel office where Leahy pointed out plaintiff in error as the man who shot him. The sergeant, one Gibbons, also testified that plaintiff in error directed them to a .22-caliber eight-shot rifle when asked where the weapon was.

Plaintiff in error's testimony of what occurred is as follows: He stated that he operated the hotel at 717 N. Clark Street; that it was a rough neighborhood and that he had been held up three times in two and a half years. While sitting in his office at about 4:00 A.M. the morning of February 3, he heard somebody pass the door but had not seen the person coming up the stairway. He then reached for his gun and continued to listen, and on investigating saw Leahy peeping from behind the bannister of a stairway, whereupon plaintiff in error approached Leahy with the rifle and in quick succession asked him why he was sneaking around, told him there were no vacancies, and told him to get out. Plaintiff in error further testified that he then asked Leahy: "Who is that henchman that came in ahead of you?"; that Leahy then pulled a gun and said: "Stick them up," whereupon plaintiff in error fired a shot from his rifle which missed Leahy and struck the wall behind him; that Leahy then started toward a bathroom in the rear of the hotel, causing plaintiff in error to believe that an accomplice was in there. Plaintiff in error asserted he then started to follow and Leahy again pulled his gun; that plaintiff in error fired a second time hitting complainant in the shoulder; that the latter then said: "You shot me, give me a bed;" that plaintiff in error told him if he wanted a bed to go to the police station, whereupon Leahy left the premises.

The foregoing constitutes the highlights of plaintiff in error's testimony from which we garner his version of the occurrence. Certain other facts which were developed in his examination and cross-examination are worthy of note.

When asked to describe the gun which Leahy drew, Sheppard stated that he did not know whether it was a gun or not, but that it had a bright barrel and was nickel-plated. Although there is no connection other than inference, the defense introduced into evidence a chromium automobile handle, which was found by a tenant of the hotel at the foot of the stairs the morning after the shooting. The tenant placed it in a mailbox, and it did not come to plaintiff in error's knowledge until about three weeks after the shooting. To rebut the testimony that Leahy was armed with a gun, the People introduced the testimony of the police officers who came to the scene; they stated that a thorough search of Leahy and of the hotel premises immediately after the shooting failed to disclose a revolver.

While on the witness stand, plaintiff in error also disclosed that he had on four previous occasions ordered Leahy from his premises, and testified without objection that on one occasion Leahy had been trying to burglarize an adjacent building through a window of plaintiff in error's hotel. When the incident here involved occurred, he told the investigating officers nothing of Leahy's previous activities, and when questioned by officers stated that he did not know Leahy. When examined about his failure to make such disclosures of previous acquaintance, he stated that he had not recognized Leahy on the night of the shooting, because the latter had his hat pulled down over his eyes. To rebut this claim, the People introduced testimony of sergeant Gibbons that Leahy was not wearing a hat when he emerged from the hotel.

In support of the defense, Raymond Koski and his wife, Helen, tenants of plaintiff in error's hotel, who resided on the floor where the shooting occurred, were called as witnesses. Helen Koski testified that she was awakened by the sound of voices arguing about 4:30 A.M. on the morning of February 3, 1948; that she heard plaintiff in error ex-

claim: "Don't pull that gun on me again," then heard a shot fired and a man exclaim "I am shot;" that she made no further investigation. Her husband, Raymond Koski, testified that at the same time he was awakened by the sound of a shot, after which he heard voices arguing; that plaintiff in error said: "Don't pull that gun on me," after which he heard a second shot. He stated that in between the first and second shots he heard a man insisting that he be given a room, to which plaintiff in error replied that he had no rooms. A police officer, one Thybault, while appearing as a rebuttal witness, verified the fact that two shots had been fired from plaintiff in error's rifle, and told of digging one pellet out of the wall at the head of the stairs.

As previously stated, no errors are assigned other than the alleged insufficiency of the evidence. As may be seen from the foregoing recital of the testimony, the record is replete with conflicts, not only between the testimony for the defense and prosecution, but also within the testimony introduced by the respective parties. A mere conflict in evidence on the material facts in issue will not justify a reversal where there is sufficient credible evidence to convict. (*People v. Merritt,* 367 Ill. 521; *People v. Gotter,* 357 Ill. 214.) We have frequently held, too, that where conflicting evidence arises, it is the province of the jury, or of the court sitting without a jury, to determine the credibility of witnesses and the weight to be given to their testimony, and in such function this court will not substitute its judgment for that of the jury or court. (*People v. Franklin,* 390 Ill. 108; *People v. Langer,* 384 Ill. 608.) In criminal cases it is the duty of this court to review the evidence, and, if there is not sufficient credible evidence, if it is improbable or unsatisfactory, or not sufficient to remove all reasonable doubt of defendant's guilt and create an abiding conviction that he is guilty, the conviction will be reversed. (*People v. Willson,* 401 Ill. 68; *People v. Holt,* 398 Ill. 606; *Peo-*

*ple* v. *Bradley*, 375 Ill. 182; *People* v. *Kazmierczyk*, 357 Ill. 592.) In the instant case the trial court accepted the complainant's version of the assault as the true one. However, we are of the opinion that even if the testimony of the People's witnesses is accepted, there is created thereby a conflict which raises a reasonable doubt as to plaintiff in error's guilt.

Without analyzing all of the evidence, which in some instances is conflicting to the point of confusion, it is to be noted that the complainant, Leahy, testified that plaintiff in error fired but one shot at him; that plaintiff in error spoke no words before the shooting, and, after it, uttered only some incoherent mumblings. Plaintiff in error and his tenant Raymond Koski, testified that two shots were fired, and both testified to conversation before and after both shots. The People's own witness, officer Thybault, corroborated the defense witnesses' testimony that two shots were fired, and told of digging one pellet out of the wall where plaintiff in error had said it struck. It is difficult to reconcile this evidence with Leahy's testimony, and this creates a grave and substantial doubt of the guilt of plaintiff in error. This doubt is further strengthened by the unsatisfactory character of Leahy's explanation of why he chose the hour of 4:00 A.M. to apply for the vacant room. It is the duty of a court and jury to resolve all facts and circumstances in evidence on the theory of innocence rather than guilt, if that reasonably may be done, and, where the entire record leaves us, as this one does, with grave and substantial doubt of the guilt of the plaintiff in error, we will reverse the judgment. (*People* v. *Willson,* 401 Ill. 68; *People* v. *Dewachter*, 353 Ill. 266; *People* v. *Logan,* 358 Ill. 64.) In such a case, where it does not appear that there are other witnesses available than those who have already testified, the cause will not be remanded for a new trial. *People* v. *Bradley*, 375 Ill. 182.

*Judgment reversed.*