People of State of Illinois, Defendant in Error, v. Frank Altiere, Plaintiff in Error.

**Gen. No. 46,963.**

First District, Third Division.

October 17, 1956.

Released for publication November 28, 1956.

Ramsey, Heinze and Grunnet, of Chicago, for plaintiff in error; Robert W. Heinze, of Chicago, of counsel.

John Gutknecht, State's Attorney, of Cook county, for defendant in error; Charles D. Snewind, Francis X. Riley, and William Sylvester White, Assistant State's Attorneys, all of Chicago, of counsel.

490

PRESIDING JUSTICE FEINBERG delivered the opinion of the court.

Defendant was indicted in the Criminal Court of Cook County under section 425, Chapter 38, Illinois Revised Statutes, 1955, which provides:

"Whoever, willfully and maliciously destroys, injures or defaces any building or fixture attached thereto, without consent of the owner, or destroys, injures or secretes any goods or chattels of another, shall be fined not exceeding $500, or confined in the county jail not exceeding one year, or both, in the discretion of the court."

A jury was waived, and upon a trial defendant was found guilty and fined $200, from which judgment he prosecutes this writ of error.

The record discloses the following material facts. Defendant was a police officer of the City of Chicago. On the morning of October 12, 1955, between the hours of 3:30 and 4:00 A. M., defendant entered a tavern conducted as a night club on West Madison Street in Chicago, and there met two men, whom we shall refer to as McManus and Reed. A woman, friend of defendant, working at the tavern as a performer, was with McManus and Reed. Defendant was invited to drink with McManus and Reed, and the woman and he were later invited by McManus and Reed to come to their room at the Morrison Hotel, giving defendant the room number. McManus and Reed left, and a short while later defendant, accompanied by the woman, proceeded to the Morrison Hotel. Defendant testified that he tried to persuade her not to go to the room, but she insisted she would have one drink with McManus and Reed. She then called the room in question on the telephone. Defendant and the woman went to the room, where they found McManus and Reed. Defendant had one drink, and she had three Scotch whiskies.

According to defendant's testimony, he left the room and went to the lobby of the hotel to get some cigarettes for the woman. When he returned to the room, he knocked on the door but got no response. He heard her scream, "Frank, come and get me." He kept knocking but was refused admission, and the woman continued to cry out, "Frank, come and get me." Defendant threatened to break down the door unless they admitted him, but McManus and Reed refused to admit him. Someone summoned George Christensen, the house detective for the Morrison Hotel. When the latter reached the room, defendant told him what had occurred. Christensen knocked on the door and got no response. At that time the woman was still calling, "Frank, come and get me." Christensen then told defendant he would get a passkey and return. At this point defendant asked Christensen what he was to do in the meantime in the event the situation got worse, and defendant testified that Christensen said to him, "Use force if necessary. Shoot the lock off. Being a Police Officer, you know what to do." A few minutes later defendant fired several shots from his gun, shooting the lock off the entrance door to the room and damaging the doorjamb and frame around the lock.

At that moment, house officer McGrath, in the company of Christensen, appeared on the scene, and they demanded admission to the room, identifying themselves as house detectives.

Charles Pierson, a police lieutenant of the City of Chicago, and other police officers arrived at the scene and gained admission to the room. The witness McGrath testified that when McManus finally opened the door, he was wearing the top of his pajamas and a pair of shorts, and that he saw the woman lying naked on the bed; that when he and other officers walked into the room, defendant went in with them, walked over to her, covered her, and asked her if she had been hurt.

Pierson, the police lieutenant, testified that when he learned defendant was a police officer, he took his gun from him and placed him under arrest. He testified that he took all of the witnesses to the police station, and there obtained statements from McManus and Reed in the presence of defendant, as well as a statement from the defendant. When he interrogated the defendant and asked him to relate what happened, defendant told him that the woman had called out two or three times for "Frank," (meaning the defendant) to come and get her; that she was screaming; that he kicked at the door, demanding admission, but McManus and Reed refused to admit him; and that he fired the shots because he heard the woman screaming.

The damaged lock, doorjamb, and frame are the subject property of the charge of malicious mischief.

Bishop on Criminal Law, Ninth Edition, Section 996, p. 744, discussing the charge of malicious mischief, states the rule to be:

"The act of mischief must be the product of malice. Malice, either express or implied, is an essential ingredient of the offence. This is evident from the very name malicious mischief. The act must be done with wicked or malicious intent or motive wrongfully and intentionally without just cause or excuse. A person therefore is not guilty when he acts under an honest though erroneous belief of authority in the exercise of a supposed right or in the performance of a supposed duty. If it be shown that the defendant acted in good faith, or under a claim of right, the charge of malicious mischief cannot be sustained."

Defendant seeks reversal of this judgment upon two grounds: (1) that the owner of the subject property gave his consent to shoot off the lock; and (2) that the evidence fails to prove a malicious intent to injure the property of another.

493

The owner's consent to the act committed rests in defendant's testimony that Christensen, the house detective, authorized him to shoot off the lock if it became necessary. Christensen was not called as a witness by the State, nor is any reason assigned for the failure to produce him, hence there is no denial in the record of defendant's testimony as to what Christensen told him.

In People v. Maertz, 375 Ill. 478, 480, where consent of the owner was relied upon as a defense, it was said:

"Until some evidence is introduced tending to show consent was given, the presumption prevails, and it is not incumbent on the People to prove want of consent. Here there was not a scintilla of evidence of consent."

It was not incumbent upon the defendant to inquire whether Christensen had the authority to direct the defendant as he did. It is sufficient, under the circumstances, that he authorized defendant to shoot the lock off, if necessary, leaving the element of necessity for the defendant to determine.

Defendant's version of the occurrence that he heard the woman cry out several times, "Frank, come and get me," is corroborated by Lieutenant Pierson. There is no showing that, when Lieutenant Pierson took the statements in the presence of defendant at the police station, any of them denied or contradicted the version given by defendant that the woman cried out several times for the defendant to come and get her.

McManus and Reed were not produced as witnesses. There is no showing that any explanation was given by McManus and Reed to Lieutenant Pierson as to why they refused admission to the room when defendant returned and rapped on the door to be admitted. If the woman screamed for help, as related by defendant, and he in good faith thought she was in

494

danger, the very refusal of McManus and Reed to admit him to the room would accentuate his belief of her danger. Under such belief, even without the consent of the owner, his desire to rescue the woman and protect her from harm, and his undisputed testimony as indicated, would remove from the act committed, the malicious intent required by the statute under which he was indicted.

■ Where acts or circumstances are attributable to either an innocent or a criminal cause, the innocent hypothesis will be adopted. People v. Potter, 5 Ill.2d 365, 372; People v. Lynn, 385 Ill. 165, 173; People v. Burgard, 377 Ill. 322, 330.

■ In People v. Sheppard, 402 Ill. 347, 351, it was said:

"In criminal cases it is the duty of this court to review the evidence, and, if there is not sufficient credible evidence, if it is improbable or unsatisfactory, or not sufficient to remove all reasonable doubt of defendant's guilt and create an abiding conviction that he is guilty, the conviction will be reversed."

People v. Cosper, 2 Ill.App.2d 168 (Abst.); People v. Brophy, 10 Ill.App.2d 334 (Abst.).

We are not confronted upon this appeal with the question whether the conduct of defendant was unbecoming a police officer.

We think the record supports the two grounds urged for reversal, and accordingly the judgment is reversed.

Reversed.

KILEY and LEWE, JJ., concur.