**The People of the State of Illinois, Defendant in Error, v. Charles Faulkner, Plaintiff in Error.**

**Gen. No. 50,488.**

First District, First Division.

February 18, 1966.

Russell & Bridewell, of Chicago (Robert C. Scott, of counsel), for plaintiff in error.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and E. Roger Horsky, Assistant State's Attorneys, of counsel), for defendant in error.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendant was indicted for armed robbery, for attempted murder, and for aggravated battery allegedly committed at Al's Food and Liquor Store at 613 South Independence Boulevard in Chicago on December 21, 1962. The cases were consolidated for trial, and the jury found him not guilty of attempted murder but guilty of the other two offenses. He was sentenced to five to twenty years in the state penitentiary on the robbery conviction, and five to ten years on the conviction for aggravated battery, the sentences to run concurrently. On this appeal, commenced in the Supreme Court and transferred here, he contends that he was not proved guilty beyond a reasonable doubt. His primary allegation is that the testimony of the witnesses who identified him as a participant in the robbery leaves a reasonable doubt as to his guilt.

The testimony of the persons in the store at the time of the robbery indicates the following: at about 11:45 p. m. on December 21, 1962, three men entered the store. The defendant approached the owner, Albert Overton, and asked him for a half-pint of gin. Overton and the defendant were at the front of the store, two feet away from each other and under fluorescent lighting, which was turned on. As Overton went to the back of the store, the defendant ran through the aisle to the back, colliding along the way with Anderson Hardy, the store's cashier. After a brief conversation between Hardy and the defendant, Hardy continued out the front door of the store with the rubbish he was carrying. When Overton reached the back of the store, the defendant was waiting for him there, holding a sawed-off shotgun across the counter. He ordered Overton to put up his hands, and then to lie down. The defendant then attempted to open the cash register, could not do so, and ordered Overton to get up. Overton opened the register, and the defendant struck him across the head with the barrel of the shotgun. He was ordered to lie down again, which he did,

372

and the defendant emptied the cash drawer while another man emptied the register at the front of the store. The defendant ordered Overton to raise his hand, and then removed Overton's wristwatch.

As the robbers were preparing to leave the store, Wendell Burch, who was eleven years old, and his brother Michael, who was about a year older, entered the premises. Wendell testified that he saw everyone facing the counter, and that a man said, "Be still." He faced the counter, and then turned around to see the defendant about twenty feet away pointing a sawed-off shotgun at him. The defendant said, "Turn around, kid, I don't play," and then shot Wendell in the left leg.

After the men left and the police arrived, Overton and Hardy agreed to go to police headquarters to look at photographs in an attempt to identify the robbers. From several hundred pictures shown them, both selected that of the defendant, and were then told his name. The defendant was apprehended on December 23, and later that day Overton and Hardy viewed him with four other men in a lineup. Each man in the lineup stated his name and address. Overton and Hardy then identified the defendant as one of the men who had robbed the store two days earlier.

Overton also testified that he had seen the defendant during the summer months preceding the robbery, prior to September. Wendell Burch testified that while he was in the hospital recovering from his gunshot wound the police brought in the defendant, whom Wendell identified as the man who had shot him.

The defendant denied participating in the robbery, and testified that he had been in a tavern from 9:30 p. m. until 1:30 a. m. on the night of the robbery. A girl who knew the defendant testified that he was in the tavern at 11:45 p. m. that night; and another girl testified that she had seen him there at 10:00 p. m. and that he was still there at 12:30 a. m. The defendant also

373

testified on direct examination that from 1960 until September 15, 1962, he had been in prison in Pontiac for strong-armed robbery.

The defendant argues that Overton's identification of him should not have been believed because Overton was in no position or condition to see the man who robbed his store; and also in view of the fact that Overton testified he saw defendant in the summer months of 1962 before September, while the defendant was in prison during that time. He further urges that his identification by Overton and Hardy at the police station was of no import because they knew the man they were looking for was named Faulkner, and the defendant was forced to state his name before he was identified. It is suggested, in attacking Hardy's identification of the defendant, that he would agree with whatever identification his employer might make. The identification by Wendell Burch is challenged by the suggestion that he would make whatever identification he thought the police wanted him to make; and that of Michael Burch is attacked as not worthy of belief because he is a thirteen-year-old who claims to be able to remember most of the people he sees walking down the street.

The jury apparently believed the witnesses for the State, and not the defendant and his witnesses. A conviction will not be disturbed unless it clearly appears that there is not sufficient credible evidence to establish the guilt of the accused beyond a reasonable doubt. Where the evidence on an issue is conflicting but legally sufficient if the prosecution's witnesses are believed, the question is for the trier of fact. People v. Carpenter, 28 Ill2d 116, 122, 190 NE2d 738.

The defendant cites People v. Jefferson, 24 Ill2d 398, 182 NE2d 1, and People v. Sheppard, 402 Ill 347, 83 NE2d 587, in support of his contention that the identifications of him do not prove him guilty beyond a reasonable doubt. In Jefferson, the victim of a strong-armed robber

was unable to identify the defendant, in spite of the fact that he had an equal if not better opportunity to observe the robber as did other witnesses who subsequently identified the defendant. In addition, a witness who had admittedly participated in the robbery testified that he had taken the victim's property himself, and that the defendant, Thomas Jefferson, was not involved in the robbery. Other evidence adduced by the State in that case was deemed by the Supreme Court to be of no weight; and it was held that the evidence as a whole had not created an abiding conviction of the defendant's guilt.

In Sheppard, the Supreme Court reviewed the testimony and concluded the record was replete with conflicts, not only between the testimony for the defense and prosecution, but also within the testimony introduced by the respective parties. 402 Ill at 351. The court stated that the entire record left them with grave and substantial doubt of the guilt of the defendant, and reversed the conviction. 402 Ill at 352.

■■ In the case at bar, the record reveals no such failure of identification or conflict in the testimony. The identification of the defendant by four witnesses was positive and unshaken. The Burch brothers each had a good opportunity to see the robber, and Overton and Hardy saw and conversed with him at close quarters. All four saw him under good lighting. The testimony of one witness alone, if positive and the witness credible, is sufficient to convict even though the testimony is contradicted by the accused. People v. Miller, 30 Ill2d 110, 113, 195 NE2d 694.

We conclude that the defendant was proved guilty beyond a reasonable doubt. The judgment of the Criminal Division of the Circuit Court of Cook County is affirmed.

Judgment affirmed.

KLUCZYNSKI, P. J. and MURPHY, J., concur.