People of the State of Illinois, Appellee, v. Robert Somerville, Gail Somerville and Paul Langusch, Appellants.

Gen. No. 50,245.

First District, First Division.

May 23, 1966.

Rehearing of Somerville denied June 22, 1966.

Rehearing of Langusch denied June 27, 1966.

Julius Lucius Echeles, of Chicago, for appellants, Robert Somerville and Gail Somerville; Alan Berg, of Chicago (Melvin B. Lewis, of counsel), for appellant, Paul Langusch.

Daniel P. Ward, State's Attorney of Cook County, of Chicago (Elmer C. Kissane and Patrick A. Tuite, Assistant State's Attorneys, of counsel), for appellee.

MR. JUSTICE BURMAN delivered the opinion of the court.

The defendants, Robert Somerville, Gail Somerville, and Paul Langusch, were convicted in a joint jury trial of committing an armed robbery at a Zayre's Department Store in Oak Lawn, and were sentenced to terms of not less than ten years nor more than twenty years in the penitentiary. In this appeal, the defendants contend that they were deprived of a fair trial by: (1) the erroneous admission into evidence of the written statement of a confessed accomplice; (2) the fact that the written statement was taken to the jury room by the jurors; and (3) the alleged misconduct of the prosecutor in conducting cross-examination and in making his closing argument to the jury. In addition, two of the defendants, Robert and Gail Somerville, contend that the written statement was admissible, if at all, only against defendant Langusch; and that the trial court should have insulated them from the prejudicial effects of that statement by means of an appropriate and timely instruction, or by ordering a severance.

Although the defendants do not contend that the evidence was insufficient to support their convictions, we feel that a detailed review of the record is nonetheless warranted. The Zayre's Department Store, at 88th Street and Harlem Avenue in Oak Lawn, closed its doors at 10:00 p. m. on Saturday, March 23, 1963. The cashiers brought bags of money containing the day's receipts to the office, and turned them over to the assistant manager of the store, who was being assisted by the manager of the men's department, Robert Olszewski. While they were processing the money, a man appeared at 10:17 p. m. wearing a grey hood which covered his entire face except for eyeholes, and carrying a gun with a cloth bag over it. The robber ordered the men to lie down on the floor, and then removed about $22,000 from the open safe. Olszewski testified that the robber, be-

383

fore leaving, asked, "What time do you bug this thing?", referring to the A.D.T. alarm system on the safe, and that the assistant manager told him "About twenty after." In the course of his testimony, Olszewski explained that the alarm system on the safe is set, or "bugged," at the time the safe is closed, and that if the safe is not closed before a given time, the alarm goes off automatically. He further testified that the time for which the alarm was set varied between 10:15 and 10:30 p. m.

Olszewski then heard two shots from the front of the store, which occurred he said as the robber and his accomplices had to shoot the glass out of the front door of the store as they left. Olszewski then heard that the night janitor had been shot. In the vestibule, he found a shoe and about $9,000 in cash which had been dropped by the robbers. At 6:30 a. m. the following morning, he and two other Zayre's employees searched the area near the store, and found another shoe about 40 feet behind the store and a black hood about 50 feet further away. On the floor of an abandoned dark blue four-door 1963 Chevrolet they found another hood, which Olszewski testified was the one that the robber had worn. A third hood was found in a gulley about three-quarters of a mile from the store.

The State's principal witness was Leon Arnold, who also was indicted for this robbery, but was not tried with the appellants. Arnold testified that at about 7:00 p. m. on the day of the robbery he was in a tavern with Douglas Aldridge and Eddie Somerville (who were also indicted, but tried separately from appellants), and that Eddie Somerville said, "he had something real good. Doug Aldridge asked him what it was. He said, 'Zayre's.'" About 8:00 p. m., they went to Eddie Somerville's house, where they met Gail and Robert Somerville and Paul Langusch, and discussed robbing the Zayre's Department Store. Gail Somerville told them

384

what wall a certain room was on and what the job of each participant was to be. Arnold testified, "Eddie Somerville and Douglas Aldridge were to take the office, and I was to keep guard on the people that would be up by the cash register. . . . Paul Langusch was to drive the getaway car. Gail Somerville was to drive the truck." Arnold described the truck, and said that after they abandoned the getaway car they were supposed to get in under some mattresses in the rear of the truck. He said they made hoods out of trousers, and identified the hoods introduced by the prosecution as the hoods they had made.

At about 9:00 p. m., according to Arnold, all six men left the Somerville's house together for the Zayre's Store, travelling in three vehicles. Robert Somerville drove the car in which Arnold, Aldridge, and Eddie Somerville rode, while Langusch drove the getaway car, a 1962 or 1963 blue Chevrolet, and Gail Somerville drove the truck. Before they left for the store, Langusch had told Arnold and the others that after the robbery he would be parked in front of the store in the getaway car. When Arnold, Aldridge, and Eddie Somerville entered the store, they put on their hoods, and while inside removed their shoes to reduce noise. All carried guns; Arnold carried one "walkie-talkie," and Langusch had another. After the robbery had been completed and the three men within the store had rendezvoused, they encountered the night janitor, who was shot in the scuffle which followed. Arnold testified that the shot had been fired from behind the janitor, and that at the time it was fired the janitor was on top of him, while Aldridge and Eddie Somerville were behind the janitor's back. The men then ran from the store, and Arnold threw down his mask and the one shoe which he then held in his hand, and continued running through the prairie without shoes. He met Aldridge several blocks from the store, and noticed that Aldridge was wearing

only one shoe. Aldridge told him that Langusch had driven the getaway car down a one-way street and that they had to "ditch" the car. The following morning, Aldridge and Arnold called Gail Somerville and the two men were picked up by him and driven to a woman's house. The money was divided between the six participants, with a seventh share going to Donald Somerville, another brother, who was, at the time, a Chicago police officer. Arnold testified that he rented a safe-deposit box in Chicago, and placed his share in it. He later bought a 1955 Cadillac with part of this money.

Arnold Locke testified that he was the owner of Locke Patrol Service and Detective Agency and had provided guard service for the Zayre's store in question. On September 10, 1962, he employed the defendant, Robert Somerville as a guard and took him through the store, explaining to him the store's security system and outlining his duties as a guard. He also explained to the defendant the details of the A.D.T. alarm system. Robert Somerville was discharged from this employment on November 30, 1962.

A neighbor of the Somervilles testified that a truck like that described by Arnold had been kept at the Somerville home. On the day of the robbery, she saw Paul Langusch working on the truck, and Robert and Gail Somerville with him. She said the truck left the premises at 9:30 p. m. and returned between 11:00 and 11:30 p. m. that night. The next morning she looked inside the truck and saw mattresses in the back.

Two women employed at the Zayre's store on the night of the robbery testified that as they left the store at about 10:10 p. m. that night they saw a dark blue 1963 Chevrolet in the parking lot, with a man sitting inside it. They assumed that the car belonged to the assistant manager of the store, who in fact owned a similar car. Mistaking the man in it to be Robert Olszewski, the women walked over to the Chevrolet, but when they saw

its occupant and discovered their error they walked away. In February of 1964, almost eleven months later, the women went to the police station and identified the defendant Langusch from a group of photographs as the man in the car. They identified Langusch again in a lineup, and again at the trial.

Detective Ernest Neely of the Cook County Sheriff's Office and another police officer testified that they arrested Langusch, Aldridge, and Edward Somerville at a tavern on April 29, 1963, and found one walkie-talkie in the glove compartment of Gail Somerville's car and one in Aldridge's car.

Leon Arnold was arrested in February of 1964, and gave the police a written statement which was substantially the same as his testimony at the trial. He testified that thereafter he read the statement to defendant Langusch in the Bedford Park Police Station, in the presence of Detective Neely, and that when he finished reading it, Langusch, "said that it was true." He further testified that when Detective Neely then asked Langusch to sign a statement, Langusch said, "he was afraid to." Detective Neely testified that when Arnold completed reading his statement, Langusch said, "Almost all of it is true, but not all of it."

Paul Langusch testified in his own behalf and denied any participation in the robbery. He and his wife both testified that he was at home on the night of the robbery. Mrs. Langusch said that she was given Arnold's statement to read at the police station, and that after she finished reading it she asked her husband whether he was implicated, and he said he was not. Langusch said Arnold read his statement to him, while he followed along with a copy given him, and that at its conclusion he denied any complicity in the robbery.

▮ In their original briefs, defendants contend that the admission into evidence of the written statement of Arnold, which implicated all of the defendants and which

387

defendant Langusch allegedly adopted by orally admitting it to be true, violated section 114–10 of the Code of Criminal Procedure (Ill Rev Stats, c 38, § 114–10, 1963). That section provides that evidence of an oral confession is not admissible where the defendant, before trial, has moved for a list of witnesses to its making but the State has failed to provide such list. At the arraignment, trial counsel for the defendants requested "any written or oral statements or lists of witnesses," to which the Assistant State's Attorney replied he didn't think there were any, but that if there were he would supply them within ten days. In their original brief, defendants contended that no such information was ever supplied. But the State filed a supplemental record and abstract, which contained the affidavit of trial counsel for the defendants stating that he did receive, about ten days after the arraignment, a list of witnesses to the alleged oral statement of Paul Langusch. From this we conclude that the requisites of § 114–10 were met, and that the evidence of the alleged oral statement of Langusch admitting the truth of Arnold's written statement was admissible.

██ Defendants' next contention is that it was reversible error to permit the jury to take a copy of Arnold's statement to the jury room during their deliberations. In People v. Allen, 17 Ill2d 55, 160 NE2d 818, our Supreme Court held that where the defendant failed to object in the trial court to the taking of exhibits to the jury room, that error was waived for purposes of appeal. 17 Ill2d at 62. The Court went on to hold:

> It is well established that the matter of whether exhibits should be taken to the jury room is within the sound discretion of the trial judge and his ruling will not be disturbed unless there was an abuse of such discretion to the prejudice of defendant.

388

(People v. Ciucci, 8 Ill2d 619). We are of the opinion that no such abuse of discretion or prejudice is shown here. (17 Ill2d at 62, 63).

While it may not have been necessary to have Arnold's statement read to the jury after he had orally testified to its contents, or to permit the statement to be taken to the jury room, we hold that it was not an abuse of discretion to do so, and that the defendants were not prejudiced thereby.

Defendants cite People v. Spranger, 314 Ill 602, 145 NE 706, in support of their contention. In that case, it was held to be error to allow a codefendant's written statement to go to the jury room over the defendants' objections. But this case differs from Spranger in that here the contents of the statement had all been presented in oral testimony by an accomplice who was not a codefendant.

■■ The defendants Robert and Gail Somerville next contend that Arnold's written statement, if admissible at all, was admissible only against Langusch; and the trial judge failed to insulate them from the prejudicial effects of that statement, either by an appropriate and timely instruction, or by ordering a severance. Trial counsel, who represented all three defendants, did enter an objection at the time the written statement was offered into evidence, but it was on grounds merely that Arnold's recollection of events at the time the statement was given was too hazy and that the statement was merely repetitious of Arnold's testimony. No motion was made for a severance at any time.

In support of their position, defendants cite People v. Johnson, 13 Ill2d 619, 150 NE2d 597; People v. Hodson, 406 Ill 328, 94 NE2d 166; and People v. Skelly, 409 Ill 613, 100 NE2d 915. These cases make clear that Arnold's written statement, if adopted only by Langusch, was admissible only against Langusch. But it should be

noted again that substantially everything contained in Arnold's written statement had already been presented in Arnold's direct testimony at the trial. Since his testimony was clearly admissible against all the defendants, it is difficult to see how the admission into evidence of a written statement containing the same assertions could be prejudicial to any defendant. But aside from this fact, the record discloses that the trial judge gave the following instruction to the jury:

> The Court instructs the jury that if they believe that Paul Langusch admitted that Leon Arnold's written statement (People's Exhibit 12) was true said written statement is admissible against Paul Langusch alone.

This instruction properly limited the application of Arnold's written statement to the defendant Langusch.

As regards the failure of the court to order a severance, it does not appear from the record that the defendants moved for a severance at any time. In People v. Watt, 380 Ill 610, 44 NE2d 580, it was held that a severance of trial of a joint defendant is not a matter of absolute right, but is within the sound discretion of the trial court. The court further held that where through the inaction of the defendant the trial court had no opportunity to exercise that discretion, there was no error. In the case at bar, the fact that the trial court did not order a severance sua sponte did not constitute error.

■ The defendants contend that the conduct of the prosecutor deprived them of a fair trial, and call to our attention two separate instances. Defendant Langusch contends that the prosecutor was guilty of grave misconduct in suggesting, without proof, that Langusch had confessed to his father and that Langusch's father had reported this confession to a policeman. It was undisputed that Langusch and his father talked alone at the

390

police station on the night of Langusch's arrest. In cross-examining the defendant Langusch and his wife, the prosecutor asked whether Langusch had confessed to his father, and whether his father had reported this to a policeman. Both witnesses answered in the negative, and no further proof was offered on the subject. On appeal, defendant Langusch contends that this innuendo without proof to support it was viciously and deliberately unfair.

Again, we note that at no time during the trial was an objection made on these grounds to the prosecutor's cross-examination. At the close of all the evidence, the trial court properly instructed the jury that they should not be influenced by anything but the law and the evidence in the case and in determining any of the questions of fact presented in the case, they should be governed solely by the evidence introduced before them. The jury was also instructed to make up their verdict upon the evidence actually given in the case, without placing any reliance upon, or giving any consideration to, any statements of counsel not supported by the evidence.

Furthermore, we must assume that if the defendant had considered the prosecutor's suggestions as prejudicial, he could have called his father as a witness to deny that any such confession was ever made to him.

For all these reasons, we conclude that the defendant was not prejudiced by the prosecutor's cross-examination of defendant Langusch and his wife.

■ ■ It is further contended that the prosecutor engaged in inflammatory and prejudicial argument when, after describing the details of the planned robbery, including the wearing of masks, the use of "walkie-talkie" radios, the carrying of guns and the shooting of the Zayre's employee, he compared the Somerville brothers to the Dalton brothers, the James brothers, and the Younger brothers of other decades. The record shows

that trial counsel did not object to these remarks. The general rule is that objections not made in apt time are regarded as waived. People v. Thigpen, 33 Ill2d 595, 213 NE2d 534. In any event, we consider the comparison of the defendants to notorious gunmen of the past to be within proper bounds of argument.

We have carefully reviewed the entire record, and find the evidence of the guilt of the defendants to be overwhelming. We are satisfied that they received a fair trial, and were proved guilty beyond a reasonable doubt. Their convictions must therefore be affirmed.

Judgment affirmed.

KLUCZYNSKI, P. J. and MURPHY, J., concur