**People of the State of Illinois, Plaintiff-Appellee,
v. Willie Sangster, Defendant-Appellant.**

**Gen. No. 11,161.**

Fourth District.

August 31, 1970.

CRAVEN, P. J., dissenting.

Asher O. Geisler, Burger, Geisler & Fombelle, of Decatur, for appellant.

Basil G. Greanias, State's Attorney of Macon County, of Decatur (Milo J. See, Jr., Assistant State's Attorney, of counsel), for appellee.

TRAPP, J.

At the conclusion of a bench trial defendant was found guilty of pandering and sentenced to a term of two to five years. He appeals.

The offense was charged in the language:

> ". . . that for money he arranged a situation in which Toye Brown, a female, did practice prostitution."

Ill Rev Stats 1967, c 38, § 11–16(a)(2).

It is defendant's theory that the evidence was not sufficient to support the conviction for this offense, arguing that if the evidence is sufficient to show any offense committed such would be under c 38, § 11–19, pimping, or possibly under c 38, § 11–15, soliciting for a prostitute.

Defendant argues that under the provisions of the Criminal Code of 1961, pandering arises by reason of the relationship existing, and acts done, between the panderer and the prostitute in terms of recruitment or arranging a situation in which the woman practices prostitution. We agree.

Apart from defendant's testimony that he did not live at the address and that he was just visiting the "nice girls" without knowledge that they were practicing prostitution, the principal facts are that following receipt of complaints of venereal disease the police raided the premises. Officers Sandage and Coventry stopped in front of the premises where defendant was sitting on the front porch. Sandage asked defendant if there were any girls there. Defendant answered that there were and directed them to go to the back door. Defendant let the officers into the building at the back door and left the room. Two women were present and Sandage spoke to Toye Brown. The latter asked Sandage to step into a small adjacent room and asked him how much he wanted to spend. He indicated and handed her a ten dollar bill which had been treated with phosphorescent powder. As they started upstairs, she left him and went momentarily into an adjacent room which he described as a kitchen. They proceeded upstairs and she removed her gown. Sandage then announced that he was a police officer and placed her under arrest. Coventry remained downstairs with Pamela Johnson, and upon Sandage's signal Coventry beckoned several waiting police officers into the building. The defendant and the two

women were thereupon arrested and taken to police headquarters. The hands of Toye Brown and defendant were examined under ultraviolet light to bring out the phosphorescent glow evidencing that each had handled the treated ten dollar bill. This item was never found.

Coventry testified that he saw Toye Brown hand something to the defendant. At this time defendant was in an adjacent room described as a kitchen. Coventry testified that following the arrest, defendant expressed outrage and said that there was no evidence and no case. Sullivan, the officer in charge of the raid, testified that defendant said that they were not going to get them this time as they were not going to get the ten dollar bill back, that they had gotten the ten dollar bill from him the last time but would not get it this time.

There is, of course, no evidence that defendant compelled Toye Brown to become a prostitute. C 38, § 11–16 (a) (1). Is there evidence showing beyond a reasonable doubt that defendant arranged a situation in which a female may practice prostitution?

The "Committee Comment" prepared for this section and found in Illinois Annotated Statutes, c 38, § 11–16, discusses the offense in the following terms:

> "Section 11–16 describes the activity here labelled 'pandering,' which involves the recruiting of persons into the practice of prostitution and with keeping practicing prostitutes in that line of endeavor. This functional classification then makes a distinction between the 'recruiter-business manager' and the runner or contact man (dealt with under the preceding section) and the individual who is the prostitute's consort—the pimp."

It is subsequently said that the emphasis of the section is directed against one who puts the prostitute in business

or keeps her there. No cases are cited as to quantum or quality of evidence required under this section. We have found none.

It is shown beyond a reasonable doubt that Toye Brown and defendant handled the treated money placed into the business by Sandage. Particularly significant is that Toye Brown immediately upon receipt of the bill, arranged to deliver it to the defendant. The testimony of Sandage is that Toye Brown went into the one remaining room on the floor where defendant could be apart from the others. Coventry saw Toye Brown hand something to defendant while he was in that room. The trier of fact could reasonably infer that this was the business arrangement and that defendant was not simply a pimp, as he subsequently boasted that he had so disposed of the bill that the police would never find it. Such suggests a claim of right or interest and control in the cash flow of the business, rather than that the money paid belonged to Toye Brown. The evidence supports a conclusion that defendant filled the "business manager" aspect of pandering as now defined.

The conclusion is further supported in the record by the testimony that in his moment of outrage upon arrest, defendant stated that the police had gotten ten dollars from him the last time, but that they would not get it this time. Such gives rise to inferences of a manner and scheme of doing business. Further evidence of defendant's management role is found in the fact that despite his testimony that he did not reside upon the premises and did not know of prostitution there, he nevertheless undertook to act as spokesman in protest of the police search of the premises for additional evidence.

The judgment of conviction is affirmed.

Affirmed.

SMITH, J., concurs.

CRAVEN, P. J., dissenting:

I am unable to agree with my colleagues that there is sufficient competent evidence to support a finding of guilty of the offense of pandering.

An information was filed charging the defendant with pandering in that "for money he arranged a situation in which Toye Brown, a female, did practice prostitution, . . . ." A bench trial resulted in a finding of guilty in the manner and form charged in the *indictment* and the defendant was sentenced to the penitentiary for a term of two to five years.

Ill Rev Stats 1967, § 11–16(a) of c 38, defines the offense of pandering in terms of one who "(1) Compels a female to become a prostitute; or (2) Arranges or offers to arrange a situation in which a female may practice prostitution." There is no indication, nor is it urged, that the defendant compelled a female to become a prostitute.

There is no essential dispute as to the evidence. Two police officers, not in uniform and in an unmarked car, drove to an address in Decatur, Illinois. The defendant was sitting on the porch and one of the officers went up to the defendant and asked him if there were any girls there. He replied in the affirmative, told the officer to go around to the back door and further advised him to tell his "buddy" to pull the car around to the back. This was done. The two officers went to the back door and were admitted to the premises by the defendant. The defendant then left for another part of the house without further conversation with the officers. Two women were in the room. One of the officers had a conversation with one of the women, agreed to a price of $10, and gave her a $10 bill which had previously been treated with a phosphorescent material. The officer went upstairs with the woman into a bedroom. She started to undress. He placed her under arrest and noti-

309

fied his partner who was still downstairs. At some point the girl to whom the officer had given the $10 had a conversation with the defendant and was seen handing him something not otherwise identified. The defendant and the two girls were taken to the police station. Ultraviolet-light examination indicated that the hands of the defendant had some of the phosphorescent material on them. The money itself was not recovered, and in fact the defendant stated that it would not be recovered.

In the rewrite of the Criminal Code of 1961, criminal offenses dealing with prostitution were reclassified and section 11–16 is described in the Committee Comments as "the activity here labeled 'pandering,' which involves the recruiting of persons into the practice of prostitution and with keeping practicing prostitutes in that line of endeavor." (SHA, c 38, sec 11–16, Committee Comments, p 668.) At another point in the Comments (p 669), it is stated:

> ". . . the emphasis of section 11–16 is shifted away from the *technique* by which the panderer accomplishes his objective, to the striving to accomplish the task, namely, putting a prostitute in business, or keeping her there. . . ." (Italicized in original.)

The evidence here is not sufficient to establish that the defendant either compelled a female to become a prostitute or arranged or offered to arrange a situation in which a female may practice prostitution.

This case is not one where the determination of guilt by the trier of fact, based upon conflicting evidence or the credibility of witnesses, is such that a reviewing court will not interfere with the finding. Where, as in this case, the evidence is insufficient to establish the offense charged, it is our duty to reverse the conviction. As stated in People v. Dougard, 16 Ill2d 603, 607–608 (158 NE2d 596, 598–599 (1959)):

". . . if there is not sufficient credible evidence, or if it is improbable or unsatisfactory, or not sufficient to remove all reasonable doubt of defendant's guilt and create an abiding conviction that he is guilty, the conviction will be reversed. It is the duty of this court to resolve all facts and circumstances in evidence on the theory of innocence rather than guilt if that reasonably may be done, and where the entire record leaves us, as this one does, with grave and substantial doubt of the guilt of the defendant, we will not hesitate to reverse the judgment. People v. Sheppard, 402 Ill 347, 83 NE2d 587 (1949)."

The brief of the appellee, in argument, describes the activity of the defendant in terms that would meet the statutory definition of the offense of pandering. For example: "Defendant should be commended for his astute management of these prostitutes. He . . . provided parking facilities . . . insured the availability of two 'girls' . . . supplied bedroom facilities . . . required the payment of money . . . [in advance]." This language may well describe conduct sufficient to convict of pandering. A reading of the record, however, does not disclose any evidence that the defendant managed prostitutes, supplied bedroom facilities, required the payment of money in advance, or insured the availability of two girls, as is argued in the brief. I would reverse the conviction.