THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
WILLIAM FLOYD, Defendant-Appellant.

Fourth District   No. 14088

Opinion filed April 7, 1978.

CRAVEN, J., dissenting.

Richard J. Wilson and Gregory K. Harris, both of State Appellate Defender's Office, of Springfield, for appellant.

C. Joseph Cavanagh, State's Attorney, of Springfield (Phyllis J. Perko and Martin P. Moltz, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE GREEN delivered the opinion of the court:
After trial by jury in the circuit court of Sangamon County, defendant William Floyd was found guilty of burglary and sentenced to 3 years' probation conditioned upon the payment of a fine of $500 and making restitution in the amount of $447.56. The theory relied upon by the State to support the conviction is that defendant was accountable for the conduct of co-indictee Steven Alexander who admitted to making unauthorized

entry into a store with the intent to steal and to the stealing of a television set and several C.B. radios from that store. The State's case rested largely on Alexander's testimony. On appeal defendant maintains that even if Alexander's testimony was believed it did not prove his (defendant's) accountability and that in any event his guilt was not proved beyond a reasonable doubt. He also contends that reversible error occurred in the admission into evidence of Alexander's confession and in the State's closing argument.

At trial, Alexander testified that about a month before the burglary, defendant offered to pay him $100 for a color television set. He stated that at about midnight on the night of the burglary, he and defendant met in a Pawnee tavern and "I asked him if I got him the T.V. that he wanted if he'd come down—or uptown and pick me up" and defendant responded that he would do so in about 1 hour. Alexander further testified that after about 1 to 1½ hours he broke into a store called "Lewis T.V." and removed a television set and several C.B. radios from the store to a nearby abandoned grain elevator where defendant then met him. There the two put the television set and radios into defendant's car, drove to defendant's sister's house where the television set was left and then to Alexander's where Alexander was let out. Alexander stated that during the ride, defendant asked him if anybody had seen him when he was taking the items from the store and told him that he would put the radios in a particular bean field. Alexander also testified that during the next night while he was riding in a car with Todd Gehrs he again saw defendant and defendant told him exactly where the radios were. Later, he and Gehrs found the radios at that spot.

Defendant denied having been with Alexander during the evening and stated that he was in Springfield at a party at a club until about 3 a.m. He admitted having received the television set but stated that he bought it later from Alexander. He also admitted that he had thrown the set into Lake Springfield but said he did so when he got scared after hearing that the set was stolen. After defendant's arrest he had a conversation with two police officers. They testified that defendant asked them if charges would be dropped if he returned the set and when they answered "no," defendant said that if that was so, the set would never be found.

For defendant to have been accountable for the burglary committed by Alexander his conduct must have been proved beyond a reasonable doubt to have met the requirements set forth in section 5—2(c) of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c)), which rules such accountability to exist if,

> "Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits,

aids, abets, agrees or attempts to aid, such other person in the planning or commission of the offense."

Clearly, if prior to the burglary, defendant had agreed with Alexander that if Alexander broke into a store and stole a color television set for him, he would pay him $100 and help him move the set from near the scene of the burglary, the jury could find the defendant guilty. Although the alleged conversation between Alexander and defendant at the tavern did not result in such an express agreement, one can be implied from the circumstances. The tenor of the conversation was that Alexander did not already have the set. Obviously, he could not buy a set at a store at that time of night nor would a set be standing outdoors where he could obtain it by a mere theft. Alexander's testimony of defendant's subsequent transportation of the obviously stolen items, his aid in hiding the radios and his question as to whether Alexander had been seen indicate that from the time of the conversation, defendant knew that the set was to be obtained in an illegal manner. Further weight is given to this contention by the evidence of defendant's throwing the set into the lake and his refusal to tell where the set was unless charges were dropped. We conclude that if the jury believed Alexander it could find beyond a reasonable doubt that defendant was guilty on a theory of accountability.

Whether the jury could properly believe Alexander is at the heart of the question as to whether guilt was proved beyond a reasonable doubt.

Defendant's alibi that he had been in Springfield until 3 a.m. was verified by several witnesses who saw him there and by the testimony of several people stated by Alexander to have been in the tavern at the time that Alexander claimed to have been talking with defendant. The people stated to be at the tavern either testified as to not being in the tavern at that time or as to having been there then but not having seen Alexander. Evidence was also introduced that Alexander bore animosity toward defendant.

During the night of the burglary, some property was stolen from defendant's car and he reported this to the local police. The local chief of police testified to meeting with defendant to discuss the theft between 2:30 a.m. to 3 a.m. The testimony refuted the testimony of both Alexander and defendant because it covered a period of time when defendant, by his own testimony, was in Springfield and, by Alexander's testimony, was with him transporting the stolen property from the town.

Alexander's testimony received at least some corroboration from the evidence that defendant had a feeling of fear when he threw away the set and the officers' testimony that he asked if charges would be dropped if he told where the set was. Todd Gehrs testified that he was with Alexander the night after the burglary when they came upon defendant.

Gehrs said that he could not hear what the two were talking about but defendant appeared to be moving his arms in a demonstrative manner. Gehrs further testified that after this conversation he went with Alexander to a place where the radios were hidden. Alexander's father testified to seeing a car similar to defendant's bringing Alexander home the night of the robbery.

■■ Alexander was an accomplice who had pleaded guilty and was awaiting sentencing at time of trial. No showing was made that any promise for leniency had been given him. Some corroboration of his testimony existed. Most of the testimony of the time frame could have been inaccurate. Defendant could have gone to the party in Springfield, returned to Pawnee, had his car broken into, talked to the police chief and then gone to help Alexander. In any event, the difference in testimony was a question for the jury. *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.

■■ The State offered Alexander's written confession into evidence. The defendant objected on the ground that there was no foundation. The trial judge indicated that objection on other grounds would likely be sustained but that there was sufficient foundation. No other grounds being offered, he overruled the objection and admitted the exhibit. The confession was permitted to be taken to the jury room. The confession was not as incriminating of defendant as Alexander's testimony in that there was no mention of an agreement on defendant's part to pay Alexander $100 for the set. In Alexander's confession he merely stated that he asked defendant to come and help him pick up a television set and some radio equipment.

In *People v. Brown* (1972), 7 Ill. App. 3d 748, 289 N.E.2d 452, this court ruled plain error to have occurred when without objection codefendants' statements, each inculpating other defendants, were admitted into evidence. The opinion does not indicate that these defendants testified and were subject to cross-examination. In *People v. Scott* (1968), 100 Ill. App. 2d 473, 241 N.E.2d 579, where the complaining defendant had opportunity to cross-examine the codefendant whose inculpating statement was admitted without objection, and in *People v. Hopkins* (1970), 124 Ill. App. 2d 415, 259 N.E.2d 577, where no opportunity for cross-examination existed, the admissions of the statements were also held to be plain error. In none of the cases were the statements consistent with the testimony of the declarant at trial. Where the testimony and the statement were consistent in *People v. Somerville* (1966), 71 Ill. App. 2d 381, 219 N.E.2d 116, error was held to be waived by failure to object. Here the confession was no more incriminating than Alexander's testimony at trial. Full opportunity for cross-examination existed. The admission of the confession and its being sent to the jury room tended to

give excess emphasis to Alexander's version of the occurrences but in the absence of objection we do not deem the error to be reversible.

■■ Lastly, defendant claims error in the State's closing argument when the prosecutor said that Alexander asked Floyd if he'd come and get Alexander if Alexander "broke in" to get the set and when the prosecutor stated his opinion that defendant was not at the Lake Club as late as he claimed. No objection was made during argument. Had objection been made, the error in these statements was of a nature that could have been corrected. We find no reversible error to have occurred here either.

We affirm.

Affirmed.

WEBBER, J., concurs.

Mr. JUSTICE CRAVEN, dissenting:

The applicable standard for reasonable doubt on review has been noted by the Illinois Supreme Court as follows:

> "It is our function on review to carefully examine the evidence in a criminal case, giving due consideration to the fact that the court and jury saw and heard the witnesses. If, after such consideration, *we are of the opinion* that the evidence is not sufficient to establish defendant's guilt beyond a reasonable doubt, it is our duty to reverse the judgment of conviction." (Emphasis added.) *People v. Jefferson* (1962), 24 Ill. 2d 398, 402, 182 N.E.2d 1, 2.

The State's case and the majority opinion rely heavily upon Alexander's testimony. Alexander's credibility is certainly suspect since there was evidence introduced that he bore animosity toward the defendant. Furthermore, his testimony placing the defendant at a Pawnee tavern at approximately 12 to 12:30 a.m. on the morning of the burglary was refuted by numerous witnesses for the defendant who testified that the defendant was at a wedding party in Springfield until approximately 2:30 to 3 a.m. In addition, the people Alexander stated to be in the tavern at the time he claimed to be talking with the defendant either testified that they were not in the tavern at that time or that they were there and did not see Alexander.

The testimony of the Pawnee police officer concerning the investigation of the reported breakin of defendant's car at 2:30 to 3 a.m. on the night of the burglary further refutes Alexander's testimony that the defendant was with him at that time transporting the stolen property. In view of these glaring inconsistencies, the animosity toward the defendant and the fact that Alexander had pleaded guilty and was awaiting sentencing at the time of the defendant's trial, he can hardly be classified as a credible

witness. His testimony was certainly not sufficient to prove defendant guilty beyond a reasonable doubt.

The majority notes that Alexander's testimony received some corroboration from the fact that the defendant discarded the television set. However this fact does not constitute an inference of guilt since defendant's disposal of the T.V., after he learned of the burglary, is certainly explainable on the grounds that his actions were those of an innocent man acting in panic. (*People v. Garrett* (1975), 62 Ill. 2d 151, 339 N.E.2d 753.) Admittedly, the defendant might be prosecuted on other grounds. However, that fact should not affect the defendant's prosecution in the instant case on an accountability theory.

In view of all the inconsistencies in Alexander's testimony, the evidence of his animosity toward the defendant, and the circumstantial nature of the corroborating evidence, there was insufficient credible evidence to remove all reasonable doubt of defendant's guilt and to create an abiding conviction that he was guilty. (*People v. Sheppard* (1949), 402 Ill. 347, 83 N.E.2d 587.) Therefore, in the absence of credible evidence to establish defendant's guilt beyond a reasonable doubt, it is this court's duty to reverse the defendant's conviction. *Jefferson.*

Accordingly, I would reverse the decision of the trial court.