(No. 25815.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* FRED BRADLEY, Plaintiff in Error.

*Opinion filed December 12, 1940.*

E. SYDNEY FEINSTEIN, for plaintiff in error.

JOHN E. CASSIDY, Attorney General, THOMAS J. COURTNEY, State's Attorney, and A. B. DENNIS, (EDWARD E. WILSON, JOHN T. GALLAGHER, and MELVIN S. REMBE, of counsel,) for the People.

Mr. JUSTICE SHAW delivered the opinion of the court:

Fred Bradley and his mother, Lulu Bradley, were charged, by indictment in the criminal court of Cook county, with assault with intent to commit murder. The

indictment contained two other counts, one charging assault with intent to commit bodily injury by means of a knife, and the other, assault with intent to commit bodily injury with a dangerous and deadly weapon. The latter two counts were dismissed and the case went to trial on the first count, only. The mother, Lulu Bradley, was found not guilty but the plaintiff in error was convicted and sues out this writ of error.

The complaining witness, Harold Haiden, was a collector for a rubber company and went to the Bradley apartment to collect about nine dollars, which he claimed was owing his company for tires on a car which Bradley had traded. Haiden was a large and powerful man, a former football player on the University of Minnesota team, while the plaintiff in error was an undersized colored man.. According to Haiden's own testimony he approached his collection task in a boisterous, threatening and provocative manner. The Bradleys lived on the third floor of an apartment occupied by colored persons, the second floor being occupied by Alfreda M. Covington, who was, and for twenty-eight years had been, a probation officer for the juvenile court and appears to be entirely disinterested. The material facts in the case come from complaining witness, the two Bradleys and Mrs. Covington.

Haiden testified that he went to the Bradley flat and was told by a roomer there that Fred Bradley was not home; that he then went to a drugstore and called the flat and the phone was answered by a man, from which he correctly concluded that Bradley was at home. He testified he went up to the second floor and rapped at the door, which was Mrs. Covington's apartment, and that, after a conversation with Mrs. Covington which will be mentioned later, he went to the third floor where the occurence in question took place. It is not clear from his testimony, or that of either of the Bradleys, whether he actually gained access to the Bradley apartment. He did testify that he rapped on the door, said

that he wanted to see Fred Bradley and that Mrs. Bradley did not open the door but said he' was breaking into her house; that she came out of the door and went halfway down the steps, calling him a gangster and other uncomplimentary names and that he told her "If you had pants on, I would make you take that back;" that, thereupon, Fred Bradley came out with a knife in his hand, and that Haiden then tried to retreat, but that Lulu Bradley obstructed his passage and Fred Bradley struck him several times with a knife. On cross-examination the witness testified that he "didn't remember" knocking Mrs. Bradley down and "didn't remember" seeing her on the floor there. Haiden's knife was found at the scene of the encounter and although he claims it was closed, the witness, Mrs. Covington, testified that she saw it lying on the floor before the police arrived and that it was open.

Mrs. Covington also testified as to the occurrences preceding the encounter, although she did not actually see the fight. She stated she was only slightly acquainted with the Bradleys, from having spoken to them in the hall, but that they never visited each other; that on the occasion in question there was loud rapping at her door which continued for some time and which was unusual because there was a door bell. She said she went to the door and asked who was there. That the collector, Haiden, said: "Open the door and tell Ted Bradley to come out. If he don't come, I'll come in and bring him out." She said: "Ted Bradley doesn't live here," and that Haiden answered: "Oh, yes he does. I just talked to him over the phone." That she said: "He does not live here;" that the rapping continued very loud, that her police dog was barking and jumping against the door and that she told Haiden to get away, but the rapping continued and he kept saying he wanted Ted Bradley. The witness then opened the door on the chain, at which time Mrs. Bradley came upstairs and that the witness told him there was the woman he was looking for; that he still

did not go away and that, when the rapping continued, she got her husband's revolver and went to the door and said: "Don't think because you are in a negro neighborhood you can break people's doors down. I don't know Ted Bradley." That Haiden then apologized and left; that afterwards she heard scuffling and, after the fight was over, she went into the hallway where she saw some blood, a black-handled knife, open, and some cards lying on the floor; that she did not touch any of these things but that the police officers picked them up. It appears elsewhere in the record that this was Haiden's knife and that it was afterwards returned to him.

The testimony of the Bradleys need not be recounted in detail. In substance, it is the same as that of Haiden and Mrs. Covington, except as to certain details of the fight. It tended to show that Haiden attempted to force his way into their apartment, used violent and abusive language, knocked Mrs. Bradley down, assaulted Bradley, and that the fight which followed was of his seeking. There is other evidence in the record, but it is either immaterial or not of a controlling nature and need not be recounted.

There are numerous assignments of error as to questions of evidence, instructions, etc., but they need not be considered. It is the duty of a court and jury to resolve all of the facts and circumstances in evidence on the theory of innocence, rather than guilt, if that reasonably may be done, and where the entire record leaves us, as this one does, with a grave and substantial doubt of the guilt of the defendant, we will reverse the judgment, (*People* v. *Dewachter,* 353 Ill. 266; *People* v. *Logan,* 358 id. 64;) and in such a case, where it does not appear that there are other witnesses available than those who have already testified, the cause will not be remanded for a new trial.

*Judgment reversed.*