The People of the State of Illinois, Plaintiff-Appellee, *v.* Daryl Stombaugh, Defendant-Appellant.

(No. 70-144; ▮▮▮▮▮▮▮▮▮▮

Second District—June 11, 1971.

*Rehearing denied July 14, 1971.*

Frederick F. Cohn, of Chicago, for appellant.

Philip G. Reinhard, State's Attorney, of Rockford, (Daniel D. Doyle, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE ABRAHAMSON delivered the opinion of the court:

Daryl Stombaugh, the defendant, was charged by indictment with the murder of Laverne Giley on July 12, 1969. The cause proceeded to trial before a jury that returned a verdict of guilty and a judgment of conviction was entered thereon. The defendant was sentenced to the penitentiary for a period of 14 to 20 years. On appeal, the defendant contends (1) that the evidence was insufficient to sustain a conviction for murder and that the judgment should be reversed or reduced to a conviction for voluntary manslaughter; (2) that the trial court committed reversible error in its refusal to give the jury instructions in regard to the use of force in defense of dwelling; (3) that the trial court improperly prevented him from presenting evidence as to his mental state at the time the incident occurred; and (4) that he was denied a fair trial by the improper final argument of the prosecutor.

At the time of the incident, the defendant was a 27 year old bachelor and lived with his parents in Rockford. He was employed as an instructor at a local dance studio and became acquainted with another instructor, Mrs. Brenda Giley, sometime in late May or early June, 1969.

In early June, Brenda came to work at the studio with large bruises on her arms and informed her fellow instructors that her husband, Laverne Giley, had "beaten her up". On June 10, Laverne came to the studio during a staff meeting and attempted to force his wife to leave with him. Shortly thereafter, Brenda filed a divorce action against her husband on grounds of physical cruelty and a temporary injunction was issued by the divorce court, after a hearing, enjoining Laverne Giley from "striking, beating, harassing or molesting * * *" his wife. In the ensuing weeks, the defendant saw Brenda Giley regularly, driving her to and from the studio daily and working with her. On numerous occasions they were followed by Laverne Giley who threatened and abused his wife and told the defendant to stay away from her. On one such occasion, Giley struck the defendant through the window of his automobile.

In mid-June, Brenda Giley rented an apartment and sought to conceal her whereabouts from her husband. On July 11, they were both in Court relative to the rights of Laverne to visit with their minor daughter and it was agreed that she would leave the child with him that day and pick her up on July 12. Brenda telephoned the defendant and asked him to meet her at her apartment after she picked up the child. Stom-

baugh arrived at the apartment at approximately 2:00 P.M. and let himself in. Brenda arrived after 6:00 P.M. with her daughter and they ate dinner and watched television together. Brenda was upset and told the defendant that her husband had learned where she lived. The defendant testified that at approximately 10:00 P.M. Laverne Giley knocked on the door of the apartment. Stombaugh was seated on a studio couch at the back of the apartment and was not visible from the door. Brenda talked with her husband for approximately 5 minutes at the door with a chain latch holding it closed. Laverne became argumentative when Brenda refused to let him in and asked if Stombaugh was there. Although Brenda denied anyone was there, her daughter told her father that Daryl was in the other room. Laverne became loud and violent and attempted to force his way through the door, shouting for the defendant to come out. Stombaugh went to a cabinet and removed a loaded hand gun that he had given Brenda earlier for her protection. He took the gun and stood at the entrance to the main part of the apartment as Laverne burst the latch and came through the door. Laverne kicked and struck Stombaugh with "rage in his eyes" although the gun was pointed at his chest. Stombaugh backed up and told Laverne to leave or he would be in "real trouble" but Laverne continued to come at him. Finally, with Stombaugh against the back wall, Giley lunged at him with his hands poised as if to choke him and Stombaugh pulled the trigger. Giley immediately turned and ran out of the apartment.

Both Brenda and Stombaugh tried to find Giley outside of the apartment but found no trace of him although his car was parked in the street. After some confusion, they took the child and spent the night at the home of Stombaugh's parents where they were contacted by the police at 9:00 A.M. on July 13.

Giley's body was first seen by a neighbor about 6:00 A.M. on July 13 lying on the ground about 75 feet from the entrance to the apartment. An autopsy showed that he had been shot three times and died of a collapse of each lung.

■■ The defendant maintains that this evidence was insufficient to prove his guilt beyond a reasonable doubt since it clearly indicated that he acted in self defense. He further calls our attention to the testimony of other witnesses as to his reputation as a truthful, peaceful law-abiding citizen in contrast to the deceased who was characterized as vicious, quarrelsome, dangerous and violent. It is also argued that Stombaugh's testimony was corroborated in all respects by Brenda Giley and was the same description of the events they both gave to the police on July 13. The jury was not compelled, however, to accept the exculpatory

statements of the defendant, even though not directly contradicted by other witnesses, but could consider them in the light of other facts and the surrounding circumstances disclosed to it. *People v. Warren*, 33 Ill.2d 168, 174; *People v. Aarhus*, III Ill.App.2d 167, 178.

The version of the shooting related by the defendant and Brenda was inconsistent in some material respects with the testimony of the pathologist who performed the autopsy. He testified that the first bullet to strike the deceased went through the lower portion of his heart and ruptured the right lung. The second bullet went completely through the chest and exited at the back. The last bullet entered the deceased from the back and went through and ruptured the left lung. It was his opinion that a person might live for 5 to 6 minutes with these wounds but that it would not be possible for him to run any distance or stand on his feet. This testimony, the only expert opinion offered at the trial, was, of course, at sharp variance with the statements of the defendant and Brenda that Giley had turned and ran rapidly out of the apartment. If Giley reached the spot where he was found the next day under his own power, he would have had to run down a flight of stairs and then another 75 feet. It would not be altogether surprising if the jury experienced doubt that a man shot through both lungs and the heart could run, or even crawl, such a distance.

The testimony of the defendant and Brenda could also be considered with the circumstance that they made no effort to contact the police after the shooting but instead left with the child for the home of Stombaugh's parents. Their statements that they were not certain at that time if Laverne was hurt or even shot were, under the circumstances, not likely to convince the jury as to their credibility.

■■■ It would be our duty to set aside the conviction if the evidence was so unsatisfactory as to raise a reasonable doubt of the guilt of the defendant. (*People v. Reese*, 34 Ill.2d 77, 80; *People v. Coulson*, 13 Ill.2d 290, 296.) However, a conflict in the evidence will not of itself create a reasonable doubt. It is our opinion that the jury had ample grounds to disregard the testimony of the defense witnesses in the light of the other facts and circumstances and that the verdict was supported by the evidence considered as a whole.

The court refused to give the jury I.P.I. Instruction No. 24.07 relative to the use of force in defense of dwelling that was tendered by the defendant. That instruction is based on par. 7—2 of the Criminal Code (Ill. Rev. Stat., 1969, ch. 38, par. 7—2) that provides as follows:

"A person is justified in the use of force against another when and to the extent that he reasonably believes that such conduct is necessary to prevent or terminate such other's unlawful entry into or attack

upon a dwelling. However, he is justified in the use of force which is intended or likely to cause death or great bodily harm only if: (a) The entry is made or attempted in a violent, riotous, or tumultuous manner, and he reasonably believes that such force is necessary to prevent an assault upon, or offer of personal violence to, him or another then in the dwelling, or

(b) He reasonably believes that such force is necessary to prevent the commission of a felony in the dwelling."

■■ The defendant contends that under the facts of this case the jury clearly should have been instructed as to the availability of this defense. He points to the evidence that the entry was indeed "violent, riotous or tumultuous" and that he had good reason to believe he or Brenda would be attacked by Giley. A close reading of the record, however, indicates that the defendant acted only in the defense of himself, not of the dwelling. When Giley first started to force an entry, his wife struck at his arm with an umbrella as he reached through the partially opened but latched door. The defendant made no effort to repel the entry at that point but waited around a corner out of the sight of Giley. After he broke the latch, Giley pushed past Brenda and first confronted Stombaugh when he was at the corridor leading to the back of the apartment. Stombaugh then backed up and only fired when he reached the rear wall of the dwelling. We cannot believe that these facts could be considered as an attempt to "terminate" an "unlawful entry" as urged by the defendant without a serious distortion of the language and intention of the statute. The jury was properly and completely instructed as to use of force in defense of person as provided in par. 7—1 of the Code. We do not comment on the argument of the State that Giley's entry into the apartment was not "inherently unlawful".

■■ The defendant next complains that the court improperly restricted the introduction of evidence offered to show his state of mind in regard to Giley. Specifically, he contends that he should have been permitted to testify that he had knowledge that Giley had been convicted for burglary and that he therefore believed him to be a violent and dangerous man. This belief would, it is urged, demonstrate that the defendant's state of mind relative to Giley was one of great, and justifiable, apprehension at the time he was attacked. Aside from the fact that a burglary is not ordinarily a crime of violence, the court permitted a great deal of evidence to the effect that the deceased was, and the defendant knew he was, a physically violent, dangerous and menacing individual. The exclusion of further evidence to this effect could not be considered reversible error.

■■ We are unable to determine if the final argument of the State

864

was improper as alleged by the defendant since the final arguments do not appear in the record or appear to have been transcribed. *People v. Espenscheid,* 109 Ill.App.2d 107; *People v. Brown,* 89 Ill.App.2d 231.

■■  For the reasons stated, the judgment of conviction will be affirmed.

Judgment affirmed.

SEIDENFELD and GUILD, JJ., concur.