THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* LEROY BROADNAX, Defendant-Appellant.

(No. 73-60; ▮▮▮▮▮▮▮▮▮▮

Second District—March 7, 1975.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellant.

Gerry Dondanville, State's Attorney, of Geneva (Clarence Wittenstrom, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE ROBINSON delivered the opinion of the court:

The defendant was indicted on one count of armed robbery. He was convicted of robbery and sentenced to 4 to 20 years imprisonment. From this conviction and sentence the defendant appeals, contending: (1) defense counsel was incompetent for failing to move to suppress an in-court identification of the defendant which was the fruit of an unnecessarily suggestive pretrial identification; (2) the defendant was not proven guilty beyond a reasonable doubt; (3) the trial court erred in not instructing the jury to disregard the prosecutor's inquiry about the defendant's past

convictions; (4) the jury's exposure to an "*Allen*" type charge (during voir dire and instructions) was prejudicially coercive; and (5) the defendant was denied a fair trial due to improper closing remarks of the prosecutor.

On September 13, 1972, the defendant went on trial before a jury on the charge of armed robbery of a Baskin-Robbins ice cream store in Elgin. The fact that a robbery occurred on May 24, 1972, and the manner in which it was carried out are not contested. The evidence is uncontradicted that on the evening in question there were three people in the well-lighted store, a customer, a part-time employee, and the store's manager. A person, alleged to be the defendant, walked in, and announced that he was holding up the store. His hand, in a jacket pocket, held what appeared to the witnesses to be a gun. He told the manager to take the money out of the cash register and put it in a bag, and threatened to take the customer as a hostage if his orders were not obeyed. He left the premises with the money and the manager called the police.

At the trial the State called three witnesses. All three gave descriptions of the robber. All three were asked to identify the defendant in court. The customer selected and identified the defendant as a man that "could be him. I can't say positively that it is him." The employee selected and identified the defendant in court as the man who had robbed the store but his identification was not positive. The manager made a positive in-court identification of the defendant as the man who had robbed his store on the date in question. The store manager had previously viewed a lineup at the Stephenson County jail. The manager identified the defendant in this lineup as the one who had robbed his store. The defendant testified that he did not commit the robbery, that he was not in Elgin on the evening in question, that he was doing some work on his car in Rockford where he was living and that after that he was at home. At the conclusion of the trial the jury was given verdict forms for both armed robbery and robbery. It returned a guilty verdict for the latter.

The lineup in question consisted of five black males of about the same age. Appellant states that he was the only bald-headed, smooth-shaven black in the lineup. However, all persons in the lineup were required to wear a hat, sunglasses and jacket similar to those described by the occurrence witnesses. Each man in the lineup was required to speak. The hat, jacket, and sunglasses worn by the person who robbed the store prevented any of the witnesses from observing whether he was bald or full-haired. This was a lineup, not a showup, as in *Stovall v. Denno* (1967), 388 U.S. 293, 18 L.Ed.2d 1199, 87 S.Ct. 1967. Unlike

the facts in *United States v. Wade* (1967), 388 U.S. 218, 18 L.Ed.2d 1149, 87 S.Ct. 1926, the defendant in this case had his counsel present at the lineup complained of. There is nothing in this record which would indicate that the lineup was conducted so unfairly or was so unnecessarily suggestive that an in-court identification following it could not stand.

■■ Additionally, the evidence in this case is clearly sufficient to support an informed judgment that the witnesses' in-court identification was based on observation independent of, and uninfluenced by, the pretrial identification procedure. Clear and convincing evidence exists that the manager's identification had an origin independent of the view at the lineup. This witness had ample opportunity to observe the defendant in a well-lighted store. He kept his eyes on him throughout the incident and was close enough to hand him the cash. There is little discrepancy between the manager's prelineup description and the defendant's actual description. The manager's identification was prompt, unhesitating and certain both at lineup and at trial. Being of independent origin, it is admissible regardless of the form of pretrial confrontation. (*People v. Fox* (1971), 48 Ill.2d 239, 269 N.E.2d 720.) Since no basis exists in the record for the allowance of a motion to suppress, counsel may certainly not be found to be incompetent for not making such motion. In order to establish lack of adequate representation at trial it is necessary to demonstrate actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney, which results in substantial prejudice, without which the trial outcome would probably have been different. (*People v. Goerger* (1972), 52 Ill.2d 403, 288 N.E.2d 416.) No such record exists here. It would appear rather that the defendant's attorney, appointed at his specific request, in lieu of the public defender office, provided competent counsel throughout the trial.

■■ The defendant next argues that the evidence fails to support proof beyond a reasonable doubt. The argument is without merit. The fact that a robbery occurred is uncontroverted. The positive identification of the defendant by the manager was clear and convincing. It was made after ample opportunity to observe. It is supported by the testimony of the two other occurrence witnesses, giving corroborative description. All three identified the defendant in open court. While neither the customer's nor the employee's identification standing alone could support a conviction, they do nevertheless provide some additional corroboration. When asked to look around the courtroom and see if the person who had committed the robbery was present, the customer identified the defendant as a man who could be him but stated, "I can't say positively

that it is him." The employee was also asked whether the person who committed the robbery was in the courtroom. When asked to look around the courtroom and "tell me if you see that man here today," he said, "yes" and identified the defendant. Further questioning developed that this identification, also, was not positive. The third witness, the manager, made a positive in-court identification. This identification testimony by eyewitnesses to the crime provides sufficient basis for a finding of guilt beyond a reasonable doubt. The defendant contends that his uncorroborated alibi testimony may not be disregarded unless rebutted. The jury, as trier of fact, may determine the relative credibility of witnesses who present conflicting versions of conduct and may certainly disregard the uncorroborated alibi testimony of a defendant where the State's evidence is determined sufficient. In *People v. Orozco* (1972), 4 Ill.App.3d 1052, 1057-58, 282 N.E.2d 756, the court stated, "[W]hen there is a positive identification of the accused by credible witnesses, we may sustain a finding of guilt by the court even where there is uncontradicted alibi evidence offered by the defense in an attempt to rebut the identification. [Citation.] There is no obligation on the trial court or jury to believe alibi testimony over the positive identification of the accused." The jury in this case heard the conflicting testimony and resolved it against the defendant. We will not substitute our judgment for that of the trier of fact, where, as here, the verdict is supported by the evidence.

■■ The defendant next argues that the jury's exposure to an *"Allen"* type charge was prejudicially coercive. In instructing the jury at the close of the evidence, the judge included an instruction containing language similar to that used in *Allen v. United States* (1896), 164 U.S. 492, 41 L.Ed. 528. The charge did include the "heed the majority" admonition, an element of the *Allen* charge which has been objected to by many courts. (*People v. Prim* (1972), 53 Ill.2d 62, 289 N.E.2d 601. In *Prim*, the supreme court specifically approved the use, under appropriate circumstances, of a deadlock instruction, set standards, and in effect said that subsequent to its decision, *Allen* type charges would no longer be acceptable. The trial in this case pre-dated *Prim* and is therefore not controlled by that decision. In *People v. Iverson*, the court passed upon an instruction almost identical in form and presentment to that given here. (*People v. Iverson* (1973), 9 Ill.App.3d 706, 292 N.E.2d 908.) In *Iverson*, the judge's instruction did include the "heed the majority" language. However, the conviction was not reversed, the court giving the following reasons: The instruction was given as part of the original series of instructions and before any possible deadlock. The record clearly supported the defendant's guilt beyond a reasonable doubt.

The court stated that "the test which we apply to the issue before us is whether upon examination of all the facts, the language used in the instruction coerced or interfered with the deliberation of the jurors to the prejudice of the defendant." Applying the standards of *Iverson* to the case before us no error requiring reversal resulted from the use of the instruction complained of. The record contains no evidence of undue coercive effect and does clearly support the defendant's guilt beyond a reasonable doubt.

■■ The defendant next alleges error in the trial court's failure to promptly, on its own motion, instruct the jury to disregard the inquiry about the defendant's prior criminal record. The prosecutor's question was clearly improper. However, an objection was promptly made prior to answer, the objection was promptly sustained by the court, no request for jury admonishment was made by defense counsel and the court did generally instruct the jury to disregard questions to which objections were sustained. Such conduct by a prosecutor, even though not objected to at trial, may constitute reversible error in a situation where the guilt of the defendant is not strongly supported by the evidence. Such is not the case here. The conduct of the prosecutor, although error, is, at most, harmless error in light of the evidence of guilt. Under these circumstances the failure of the court on its own motion to specifically instruct the jury to disregard the question was not error.

■■ Finally, the defendant claimed he was denied a fair trial due to the inappropriate remarks of the prosecutor in closing argument. The remarks were not objected to at trial and the jury was instructed to disregard remarks of counsel not based upon the evidence. Nevertheless, the conduct of the assistant State's Attorney in calling the defendant a "liar" several times must be condemned. It is improper for a prosecutor to characterize a defendant as a liar, unless such characterization is clearly supported by the evidence or by reasonable inference to be drawn whereupon the counsel states his opinion as one based upon the evidence. Such conduct does not constitute reversible error, as here, where proof of guilt is supported by substantial evidence. *People v. McCloskey* (1971), 2 Ill.App.3d 892, 270 N.E.2d 126; *People v. Butler* (1974), 58 Ill.2d 45, 317 N.E.2d 35; *People v. Weathers* (1974), 23 Ill. App.3d 907, 320 N.E.2d 442.

The jury verdict in this case is supported by sufficient proof of guilt beyond a reasonable doubt. None of the errors cited individually or collectively constitute reversible error.

Affirmed.

EBERSPACHER and CREBS, JJ., concur.