THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TERRY REYNOLDS, Defendant-Appellant.

(No. 73-84;

Third District—March 14, 1975.

*Rehearing denied April 21, 1975.*

Barton & Barton, of Marseilles (John L. Barton, of counsel), for appellant.

James O. Christy, Assistant State's Attorney, of Peoria, for the People.

Mr. JUSTICE SCOTT delivered the opinion of the court:

Terry R. Reynolds, the defendant, after trial by jury in the Circuit Court of Peoria County, was found guilty of the crime of aggravated battery and was sentenced to the penitentiary for a term of not less than 3 nor more than 10 years.

The prosecution of the defendant resulted from a melee which occurred at approximately 4 o'clock A.M. on November 11, 1972, in an

establishment known as the Talk of the Town Tavern in the City of Peoria. At this time, date and place a State trooper, David Elmore, while in plain clothes and in the course of an investigation, was struck across the face with a beer bottle with such force and violence that his nose was almost severed from his face. The victim Elmore had entered the tavern at approximately 3:30 A.M. in the company of one Gene Beaty, an informant, and another individual named Jack Warster. An argument soon ensued between Beaty and a Donna Adams as to the ownership of a dollar bill which was lying on the bar. Beaty struck Donna Adams, knocking her to the floor and immediately thereafter a brawl erupted during the course of which Trooper Elmore, as we have stated, was seriously injured.

The police were called to quell the brawl, and the patrons in the tavern were individually interviewed in an effort to determine who had committed the assault upon Trooper Elmore. Initially the police arrested Jacob Parks, a Negro who participated in the brawl, and charged him with committing the crime of aggravated battery upon the person of Elmore. The charges against Parks were subsequently dismissed, and the defendant was arrested and charged with the crime.

From the testimony adduced during the course of the defendant's trial it is clear that great confusion prevailed at the time of the brawl and that testimony concerning the incident did little to clarify the matter.

The defendant in this appeal first raises the issue that he was denied certain constitutional rights by the content of the prosecutor's closing argument to the jury. In his brief the defendant then attempts to support this contention by arguments that he was not proven guilty beyond a reasonable doubt. We note that the "reasonable doubt" issue was raised in the defendant's motion for a new trial, and hence we deem that question properly before this court.

In examining the record we find a number of witnesses were called by the prosecution, and we can only conclude that their testimony was far from being definitive or convincing. The victim, Trooper Elmore, at the trial testified that he did not know who had struck him across the face with a bottle; however, an Officer Hoffman who investigated the incident testified that Elmore, while at the hospital, had identified his assailant as being a black man, with Afro haircut, wearing granny glasses and a solid dark jacket. This description fits Jacob Parks who had originally been arrested for the crime. It is significant in analyzing the testimony to note that at the time of the brawl Parks was the only Negro man in the tavern.

A student at Bradley University, one Mike Novelle, testified that he watched the fight and saw Elmore struck with the bottle and that the

hand holding the bottle was white. Novelle admitted to having been drinking steadily at various places for some 7 hours prior to the fight. He had been drinking gin tonics and beer. He readily stated "I had quite a lot to drink." Also unexplained is why this witness waited 5 days before coming forth with his statement.

Witness Carlos Dean Melvin was an owner of a 50-percent interest in the Talk of the Town. He testified that he didn't see who had struck Elmore but acknowledged that just subsequent to the striking, Elmore stated that he was hit by a colored guy.

Geri Crawford, a dancer working at the Talk of the Town at the time in question, testified that she didn't see who wielded the bottle but did see Jacob Parks hitting Trooper Elmore with his fists.

A Jack Warster testified that he didn't see anyone wield a bottle but that he was hit by Parks with such force that he lost two teeth.

Jacob Parks readily admitted that he was involved in the brawl and that he struck Beaty, Elmore and another fellow. He denied using a bottle and identified the defendant as the one who used such a weapon. Such identification, however, loses its credibility when we find from the record that Parks initially told the police that he didn't know who struck the victim with a bottle and then changed his story so as to identify the defendant after he himself was charged with the crime.

A William Cockrell, who was collecting admissions at the door of the Talk of the Town, identified the defendant as the party who hit Elmore with a bottle, but this testimony can be held in suspect since Cockrell on November 12, or 1 day after the incident, stated to a Detective Hoffman that he never saw anyone with a bottle in his hand.

The defendant testified in his own behalf and denied that he had struck or in any way injured Trooper Elmore. He testified that he was in the mens' room at the time of the melee.

There is uncontradicted testimony in the record that the room where the fight occurred was dimly lighted and visibility was poor. Counting Donna Adams, there were at least six people involved in the fight either as combatants or intervenors attempting to restore order.

After recounting and examining the testimony as we have done, we are not surprised that this case proved to be a difficult one for the jury to decide. At one time the foreman of the jury reported to the bailiff that they were unable to reach a verdict. When this information was imparted to the trial judge the jury was recalled to the courtroom and charged with the importance of arriving at a verdict. The defendant characterizes this instruction as a "dynamite charge." Approximately 1 hour later the trial judge ordered the bailiff to again return the jury to the courtroom for the purpose of discharging them and declaring a mistrial;

however, at that moment the jury reported that they had arrived at a verdict which as we have stated was a finding of guilty.

This court is extremely loathe to substitute its judgment for that of the jurors who had the opportunity to observe the demeanor of the witnesses; however, we cannot ignore the cardinal rule that we are charged with the duty of determining whether or not an accused was convicted upon evidence establishing his guilt beyond all reasonable doubt. (See *People v. Willson*, 401 Ill. 68, 81 N.E.2d 485; *People v. Bradley*, 375 Ill. 182, 30 N.E.2d 636.) An examination of the testimony proffered by each of the witnesses for the prosecution discloses that all of such testimony is far from convincing. The trial testimony repeatedly varies or is diametrically opposed to statements given by the witnesses when the crime was investigated by police officers. The testimony of the witness Novelle is an exception, yet by his own admission he had been drinking steadily for hours. The identity as to who so viciously assaulted Trooper Elmore may never be known and is a result which we deplore; however, the rule requiring an accused's guilt be proven beyond all reasonable doubt would be meaningless if we did not reverse the conviction in the instant case. The entire record leaves us with a grave and substantial doubt as to the guilt of the defendant, and we are therefore compelled to reverse the judgment of the Circuit Court of Peoria County and the sentence imposed thereon. Having reached this conclusion it is unnecessary for us to consider the other assignments of error.

Judgment reversed.

ALLOY and DIXON, JJ., concur.