THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* TOMMY ORTIZ, Defendant-Appellant.

First District (1st Division)   No. 62497

Opinion filed November 18, 1976.

James J. Doherty, Public Defender, of Chicago (Deborah J. Gubin and John Thomas Moran, Assistant Public Defenders, of counsel), for appellant.

Bernard Carey, State's Attorney, of Chicago (Laurence J. Bolon and Michael E. Shabat, Assistant State's Attorneys, of counsel), for the People.

Mr. PRESIDING JUSTICE GOLDBERG delivered the opinion of the court:

After a jury trial, Tommy Ortiz (defendant) was found guilty of murder (Ill. Rev. Stat. 1973, ch. 38, par. 9—1), burglary (par. 19—1) and unlawful use of weapons (par. 24—1(a—10)). He was sentenced to concurrent terms of 50 to 100 years for murder, 5 to 15 years for burglary and 3 to 10 years for unlawful use of weapons. Defendant has appealed.

In this court, defendant contends that he was denied a fair trial because the prosecutor, in rebuttal argument, accused defendant and his attorney of fabricating the defense. The State's Attorney is also claimed to have prejudicially characterized a transaction at which defendant was present as a "narcotics buy." Defendant further maintains that he was not proved guilty beyond a reasonable doubt.

On April 30, 1974, at 7:30 p.m., Sandra Mellor and George Diaz returned from a shopping trip to the apartment they had been sharing. Miss Mellor testified that the place was in a shambles, with furniture overturned, dresser drawers taken out and clothing strewn about. A man stepped out of the apartment entrance hall into the living room and shot George Diaz fatally in the chest with a revolver. The assailant then ran out of the apartment and down the stairs.

The witness described the intruder as having worn a "dark leather-looking jacket, dark pants" and a purple ski mask. She testified that he was wearing dark brown gloves at the time he shot Diaz. The police were then called. Miss Mellor discovered that $300 held by a silver money clip, a necklace, a ring and two wrist watches were missing from the apartment. In the living room, she found a duffle bag that, before the burglary, had been kept folded in a closet. It contained the couple's stereo receiver and three photographs.

Officer Gates testified that he and his partner responded to a "Robbery in progress" radio call for 652 West Waveland at about 7:40 p.m. by driving south on the Inner Drive in Chicago. At the intersection of Waveland Avenue, less than a block from the scene of the burglary, Officer Gates observed a blue Corvette automobile which was also in the southbound lane of the Inner Drive. The defendant, whom the officer recognized, was in the driver's seat with a black leather jacket draped over his shoulders. After he saw Officer Gates, defendant backed his car north at a high rate of speed, struck two cars, went across the northbound lanes, jumped the curb and crossed the parkway onto the southbound section of Lake Shore Drive. The defendant's car then sped south for four or five blocks at speeds reaching 90-100 miles per hour, sharply swerved east across the median strip, bounced over the northbound lanes of the expressway, struck a fence and rolled over several times. Officer Gates had been in pursuit in the squad car with the siren and emergency lights in operation. He found defendant lying near the car in a semiconscious state.

The officer testified that he observed a .38-caliber revolver, loaded with five live cartridges and one spent shell, on the ground between defendant and the car. Defendant was wearing dark pants. Under the car was a black leather jacket with a flashlight, a pair of handcuffs, two watches, a ring, a locket, a necklace and a black holster in its pocket. A purple ski mask and a pair of brown gloves were found in a sleeve of the jacket. The items of jewelry thus recovered were identified at trial as the articles missing from the scene of the burglary and murder. Miss Mellor testified that the ski mask found by Officer Gates looked like the one worn by the intruder.

Officer Donsbach testified that he accompanied defendant to the hospital in the ambulance. In the emergency room, the officer examined

defendant's clothing and found $300 held by a money clip inside a pants pocket. The clip was later identified by Miss Mellor as the one missing after the burglary.

A police fingerprint expert identified as belonging to defendant a fingerprint taken from a photograph that had been found in the duffle bag. A .38-caliber bullet was recovered from a wall in the Mellor apartment but the State's firearms expert could not conclusively determine that the bullet had been fired from the gun found with the defendant. During closing argument, however, defendant's counsel stated that the defense had attempted to stipulate to the fact that "the bullet recovered from the apartment * * * was probably fired from the gun * * * recovered at the scene of the crash."

Defense witness Elton Dorsey testified that he talked with defendant for 15 minutes on the lakefront at Addison Street in Chicago, beginning at 7:15 or 7:30 p.m. on the evening in question. Defendant was driving a blue Corvette at the time.

Defendant testified that, following guilty pleas, he had been convicted of burglary in 1969 and armed robbery in 1970. Upon his release from jail in 1973 he had been informed that he could neither own nor possess firearms for five years without incurring liability for unlawful use of weapons. Defendant stated that in April 1974, he and a man named Valdez had gone to George Diaz' apartment on Waveland Avenue where Valdez introduced him to Diaz. Valdez had then purchased marijuana from Diaz who showed them pornographic or salacious photographs of himself and his girl friend. Defendant at that time held and touched the pictures. Defendant had been unable to locate Valdez and he was not called as a defense witness.

Defendant also testified that on April 30, 1974, after talking with friends at the lakefront, he drove south on the Inner Drive to Waveland Avenue where there was a large corner lot containing billboards fronted by bushes. He saw a man run around the corner of Waveland onto the lot, put something in the bushes and go back around the billboards. Defendant double parked, went to the bushes and returned to the car with a leather jacket he had found. Defendant asserted that a gun and some money in a clip were contained in the jacket. He pocketed the money and threw the jacket over the gun on the passenger seat. At that point he saw a squad car stop in front of him with its emergency lights on. Officer Gates jumped out and pointed his gun at defendant's windshield. Defendant had seen that particular officer earlier in April and knew that Officer Gates was aware that defendant had served time in prison. Defendant further testified, "I got scared, I panicked and I ran." He said that he then backed his car over the embankment onto Lake Shore Drive and proceeded south at 80-90 miles per hour when the car went out of

control and crashed. Defendant testified on direct examination that he had not told Officer Gates at the first opportunity what he had seen regarding the gun and jacket because defendant thought the officer would not believe him. Defendant testified that he had not worn a leather jacket over his shoulders on the night in question. He expressly denied being near the Waveland apartment on the day of the murder and that he shot George Diaz.

We will first consider defendant's argument that he was not proved guilty beyond a reasonable doubt because the evidence against him was wholly circumstantial and the prosecution failed to exclude every reasonable hypothesis of innocence.

Defendant insists that his own testimony, as corroborated by Elton Dorsey, places him at the lakefront at 7:30 p.m. and thus proved that it was impossible for him to have been the murderer. He urges that since this testimony was neither contradicted nor improbable, the jury was not free to reject it, citing *People v. Jordan* (1954), 4 Ill. 2d 155, 163, 122 N.E.2d 209. He further claims that his testimony adequately explained his acquisition of the jacket with its contents and his flight from Officer Gates. He concludes that a reasonable hypothesis of innocence was thus established and the jury was under a duty to resolve all evidence in favor of innocence; citing *People v. Bradley* (1940), 375 Ill. 182, 30 N.E.2d 636, and *People v. Scott* (1951), 345 Ill. App. 73, 102 N.E.2d 160.

■■ Under applicable principles, to sustain a conviction upon circumstantial evidence, it is "necessary only that the proof of circumstances * * * be of a conclusive nature and tendency leading, on the whole, to a satisfactory conclusion and producing a reasonable and moral certainty that the accused and no one else committed the crime." (*People v. Dukett* (1974), 56 Ill. 2d 432, 441, 308 N.E.2d 590, quoting *People v. Bernette* (1964), 30 Ill. 2d 359, 367, 197 N.E.2d 436.) In addition, a jury is not required to accept exculpatory testimony by the defendant but "may properly consider the surrounding circumstances and the probability or improbability of defendant's story." (*People v. Heflin* (1976), 40 Ill. App. 3d 635, 644, 351 N.E.2d 594. See also *People v. Stombaugh* (1971), 132 Ill. App. 2d 859, 861-62, 271 N.E.2d 69.) Indeed, when a defendant attempts to explain his presence in the vicinity of a crime in which he denies participation, he must "tell a reasonable story or be judged by its improbabilities." *People v. Morehead* (1970), 45 Ill. 2d 326, 330, 259 N.E.2d 8.

■■ We conclude that the record contains very substantial evidence of defendant's guilt. Defendant's swift and reckless flight from Officer Gates at speeds imperiling defendant's own life is strong evidence of guilt. Such extreme conduct is less consistent with defendant's explanation that he panicked, fearing an unlawful use of weapons charge, than with the

inference that he feared apprehension with the evidence of a recent burglary and murder in his possession. If not plausibly explained, defendant's possession of the gun, leather jacket, ski mask, jewelry and money clip containing $300 is telling evidence of guilt. Defendant's story of how he obtained possession of these items is inherently improbable. It is difficult to believe that the man defendant claimed he saw would have discarded $300 in unmarked currency along with the more identifiable evidence of the crimes. Further, it is highly improbable that defendant would happen upon a man disposing of the fruits of a burglary in the immediate vicinity of an apartment which defendant also claimed to have previously visited fortuitously with Valdez. The fingerprint on the photograph cannot be overlooked as evidence of defendant's connection with the crime, especially since the picture had been loaded into the duffle bag with the stereo receiver.

In our opinion, defendant's story was not sufficiently probable to support a reasonable hypothesis of innocence. The requirement that every reasonable hypothesis other than guilt must be excluded when the State's case is founded on circumstantial evidence (*People v. Benedik* (1974), 56 Ill. 2d 306, 309, 307 N.E.2d 382), does not compel the prosecutor to prove guilt "beyond any possibility of a doubt." (*People v. Mackins* (1974), 17 Ill. App. 3d 24, 33, 308 N.E.2d 92, quoting *People v. Murdock* (1971), 48 Ill. 2d 362, 367-68, 270 N.E.2d 21). Further, the trier of fact may disbelieve defendant's story and is not required to ignore the inferences flowing from the other evidence nor search for potential explanations "compatible with innocence, and elevate them to the status of a reasonable doubt." *People v. Benedik* (1974), 56 Ill. 2d 306, 309, 307 N.E.2d 382; *People v. Pitchford* (1976), 39 Ill. App. 3d 182, 189, 350 N.E.2d 170.

The cases cited by defendant do not require or support reversal in the case before us. In *People v. Jordan* (1954), 4 Ill. 2d 155, 122 N.E.2d 209, the defendant's story was neither improbable nor contradicted by the surrounding circumstances. In *People v. Holsapple* (1975), 30 Ill. App. 3d 976, 333 N.E.2d 683, the evidence demonstrated that at least one person other than defendant was present at the scene of the killing. No evidence is included in the record before us that anyone was present at the time of the killing other than Sandra Mellor, George Diaz and the lone intruder. *People v. Bradley* (1940), 375 Ill. 182, 30 N.E.2d 636, and *People v. Scott* (1951), 345 Ill. App. 73, 102 N.E.2d 160, invoke the principle that a court or jury must resolve facts in favor of innocence if it is reasonable to do so. In both cases, unlike the appeal before us, the evidence against defendants was weak and contradictory. The evidence of guilt here presented is convincing beyond reasonable doubt.

Defendant next urges that he was denied a fair trial because during

rebuttal argument, the assistant State's Attorney accused defendant and his counsel of fabricating the defense. In support of this claim, defendant points to specified portions of the questioned argument and to the rebuttal argument taken as a whole. The record shows that defense counsel made no objection to any of these allegedly prejudicial specific comments or to the argument as a whole.

The law of Illinois is clear and definite that allegedly prejudicial remarks made during closing argument are waived when no objection is made. (*People v. Moore* (1973), 55 Ill. 2d 570, 576, 304 N.E.2d 622; *People v. Edwards* (1973), 55 Ill. 2d 25, 35, 302 N.E.2d 306.) The same authorities are dispositive of defendant's additional argument that he was prejudiced by the State's characterization of the alleged marijuana sale between Valdez and Diaz as a "narcotics" transaction.

■■ The law also provides, however, that the waiver rule must be relaxed when a closing argument, although not objected to, is so inflammatory and prejudicial as to deny a fair trial to defendant and operates as a "material factor in the guilty verdict of the jury." (*People v. Young* (1975), 33 Ill. App. 3d 443, 447, 337 N.E.2d 40. See also *People v. Romero* (1967), 36 Ill. 2d 315, 320, 223 N.E.2d 121.) In determining whether the argument was impermissibly prejudicial, we must "examine the offending remarks in the context of the entire record." (*People v. Hoggs* (1974), 17 Ill. App. 3d 67, 70, 307 N.E.2d 800.) In *People v. Witherspoon* (1975), 33 Ill. App. 3d 12, 22, 337 N.E.2d 454, we cited a number of authorities illustrating this proposition and demonstrating the modern trend to enforce the doctrine of waiver where no objection is made to allegedly prejudicial final argument aside from situations involving clearly prejudicial examples of plain error. We will, therefore, analyze each of the challenged remarks.

Defendant first complains that the prosecutor charged defense counsel with attempting to put up "a smokescreen, [a] little confusion." Examined in its full context, this statement was the assistant State's Attorney's response to a portion of the defense closing argument which referred to the positioning of the leather jacket during defendant's flight from Officer Gates. The prosecutor argued that defense counsel had omitted significant testimony on this factual issue. As such, this argument was based upon the trial evidence and was in no way inflammatory or prejudicial to defendant. *People v. Palmer* (1970), 47 Ill. 2d 289, 299-300, 265 N.E.2d 627.

Defendant also challenges the assistant State's Attorney's repeated reliance on an analogy between the physical evidence and the slats of a fence. The prosecutor recited each element of the State's evidence in support of conviction and then charged, in effect, that defendant had manufactured his testimony to counteract the physical evidence and thus

to "run around the fence." Defendant specifically characterizes this tactic as an accusation that defendant and his counsel had combined to fabricate the defense. Defendant cites authorities for the principle that this type of accusation is reversible error. *People v. Freedman* (1954), 4 Ill. 2d 414, 123 N.E.2d 317; *People v. Polenik* (1950), 407 Ill. 337, 95 N.E.2d 414; *People v. Savage* (1934), 358 Ill. 518, 193 N.E. 470, and *People v. Martin* (1975), 29 Ill. App. 3d 825, 331 N.E.2d 311.

Upon careful examination of the remarks in question, we do not agree that defense counsel was directly or indirectly accused of fabrication or subornation of perjury. The only significant reference to defense counsel shown by this record was made by the prosecutor as follows:

"Well, there is a fence in this case, and that fence is composed slat by slat of the physical evidence * * * *. You start out with the question, you are a defendant, I suppose, talk to his lawyer, talk to your lawyer, was there a burglary? Maybe we can say there wasn't a burglary. But then you have got a bunch of pictures, * * * . pictures of an apartment all thrown apart. * * * And you are going to look at those pictures. Suddenly you can't say that there wasn't a burglary."

The quoted passage does not, in substance, accuse the attorney of counseling a perjured defense. The remainder of the rebuttal argument, read as a whole, directs all references to the manufacture of a defense at the defendant himself. The cases cited by defendant are therefore distinguishable because all involved prejudicial charges directed against defense counsel.

*People v. Weathers* (1975), 62 Ill. 2d 114, 338 N.E.2d 880, also cited by defendant, is not applicable to this appeal. The prejudice flowing from the People's argument in the instant case, if any, does not approach the degree resulting from the multiple errors committed by the prosecutor in *Weathers.* As the court there stated, "Each case of this kind must be decided upon its own facts." 62 Ill. 2d 114, 120.

In substance, the argument under scrutiny amounted to repeated emphasis upon the principal features of the State's case combined with remarks that defendant had offered false testimony in response thereto. Read in its full context, the rebuttal was a continuation of the People's initial argument which thoroughly attacked the improbability of defendant's explanations of his demonstrated connection with the burglary and murder.

■■ Under Illinois law, statements in closing argument that defendant gave false testimony are not reversible error when the prosecutor's conclusion is based on the evidence and inferences that may reasonably be drawn from it. (*People v. Sinclair* (1963), 27 Ill. 2d 505, 509, 190 N.E.2d 298, and *People v. Weaver* (1959), 18 Ill. 2d 108, 115, 163 N.E.2d 483.) In

gauging the propriety of such statements, a reviewing court may consider the fact that the State has introduced substantial evidence of guilt. (*People v. Broadnax* (1975), 26 Ill. App. 3d 67, 72, 325 N.E.2d 23, *leave to appeal denied,* 60 Ill. 2d 598.) In the instant case, given the strength of the State's evidence and the inherent improbability of defendant's story, we conclude that an inference could reasonably be drawn that defendant's story was false and contrived. As the supreme court found in *Weaver,* the record before us shows "nothing to indicate that the belief of the State's Attorney [that defendant's testimony was false] was based on anything other than the circumstantial evidence and the inferences to be drawn from it." (18 Ill. 2d 108, 115.) Under the foregoing principles, the remarks in question were not so prejudicial as to deny defendant a fair trial and did not operate as a material factor in the verdict rendered.

■■ Defendant further urges that the prosecution reference to the alleged marijuana sale between Diaz and Valdez as a "narcotics" sale was unduly prejudicial because it cast inaccurate aspersions upon defendant. We cannot agree. Even assuming that characterizing marijuana as a narcotics was improper, no shadow was cast upon defendant by these remarks. All evidence concerning the transaction was produced by defendant who testified that the sale was between Valdez and Diaz. Defendant disassociated himself from active participation in the sale when he testified, "I didn't know what was going on when I went with him [Valdez]." Further, defense counsel, in her own closing argument, referred to the sale as a "dope transaction." The applicable principle is stated in *People v. Clark* (1972), 52 Ill. 2d 374, 390, 288 N.E.2d 363: " ' * * * Where it appears that improper remarks do not constitute a material factor in the conviction, or that they are of such a minor character that prejudice to defendant is not their probable result, the verdict will not be disturbed.' [Citations.]"

The judgment appealed from is accordingly affirmed.

Judgment affirmed.

SIMON and O'CONNOR, JR., JJ., concur.