THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ZULINA FULLER *et al.*, Defendants-Appellants.

First District (2nd Division)    Nos. 79-484, 79-1704 cons.

Opinion filed December 16, 1980.

Katz, Hirsch, Wise & Colky, Ltd., of Chicago, for appellant Zulina Fuller.

Ralph Ruebner and Alan D. Goldberg, both of State Appellate Defender's Office, of Chicago, for appellant Amos Chairs.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Kathleen Warnick, and Edward M. Rubin, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE STAMOS delivered the opinion of the court:

Defendants Zulina Fuller and Amos Chairs were tried separately, and were convicted of the robbery and murder of Luther Price. Each was sentenced to a term of 18 to 30 years in the Department of Corrections. Their separate appeals to this court have been consolidated. Defendant Fuller asserts as error the following: the trial court denied a pretrial motion to suppress her post-arrest statement to police; the trial court refused to instruct the jury on involuntary manslaughter; the prosecutor made remarks which prejudiced the jury and deprived her of a fair trial; there was insufficient evidence to support findings of guilty as to robbery and murder.

Defendant Chairs was found guilty after a bench trial, and he contends on appeal that the evidence did not prove him guilty beyond a reasonable doubt, and, even if properly found guilty, his case should be remanded for resentencing, since the trial court did not advise him fully of his right to elect sentencing under the "new" or "old" acts. Ill. Rev. Stat. 1979, ch. 38, par. 1008—2—4(b).

On August 19, 1977, Chicago police discovered the body of Luther Price in an upstairs bedroom of his townhouse apartment at 9120 S. Princeton. The body was found bound and gagged and covered by a mattress. The body showed early signs of decomposition, indicating that the victim had been dead for a few days. The apartment was in considerable disarray, and appeared to have been ransacked. Medical evidence indicated that the victim died of asphyxiation, probably resulting from the gag.

On August 22, 1977, defendant Chairs, having learned that the police were looking for him in connection with Price's murder, surrendered to police. Initially, Chairs accused his sister, Verna Harris, and her boyfriend, Richard Holms, of the killing. After police questioned Harris and Holms, defendant Chairs admitted that he hadn't told the truth, and offered another explanation. He stated that he had come to Price's apartment on the evening of August 16, 1977, and was admitted to the apartment by defendant Fuller, who informed him that she had tied up and robbed Price when he "got fresh" with her. Defendant Chairs then went upstairs and found Price bound and gagged. Chairs related that he was uncertain whether or not Price was still alive, since he heard no heartbeat but thought he saw the victim's stomach move. Chairs made no move to untie Price but instead returned to the first floor where, at defendant Fuller's direction, he loaded some items of Price's property into Price's car and drove off with Fuller.

Shortly after taking defendant Chair's statement, police arrested Zulina Fuller. Defendant Fuller was attending a party at the house of

Willie Bailey when she was arrested at 8:10 p.m. on the evening of August 22. Bailey watched from his front door as the police led Fuller away. He testified at the hearing on Fuller's motion to suppress her statement that she appeared to be intoxicated. Billy Mallettle, a neighbor who had let Fuller use his phone a few hours earlier, also testified that she appeared to have been drinking heavily at that time. Bailey and Mallettle described themselves as "friends" of defendant Fuller. The two police officers who arrested Fuller, and another officer and an assistant state's attorney who spoke with her at the police station, stated that they saw no evidence of intoxication and detected no odor of alcohol.

Investigator Solecki, one of the arresting officers, read defendant Fuller the *Miranda* warnings at the time of her arrest, and again upon reaching the police station. He testified that she said she understood, and wanted to make a statement. Defendant Fuller then gave a statement to Solecki in the presence of two other officers. Later, she repeated her statement to Assistant State's Attorney Latherow. This statement was given in the presence of a court reporter at 10:30 p.m., after Latherow had read the *Miranda* warnings to Fuller. Fuller then read a transcript of her statement, initialed every page, made some minor corrections, and signed the statement.

Defendant Fuller's testimony at trial was more or less consistent with her oral and written statements. She testified that on the evening of August 16, she went to Luther Price's apartment. Price admitted Fuller. She had been introduced to Price the day before by Verna Harris, defendant Chairs' sister. Defendant Chairs arrived about 2½ hours later. In the interim, Fuller had consumed three drinks and five or six depressant tablets. Price and Chairs began arguing about Verna Harris, and Price indicated he wanted Harris' clothing removed from his apartment. Price and Chairs then went upstairs, and Fuller shortly thereafter heard sounds of scuffling. Fuller went into the upstairs bedroom and found Price on the floor. Chairs had his knee on Price's chest, and was holding a cord around Price's neck. Chairs directed Fuller to tie Price's hands. Fuller was unsuccessful in this. Chairs then ordered her to take some money from Price's pocket, and place it in Chairs' pocket. Fuller acted as directed. Chairs next told Fuller to hold the cord around Price's neck while Chairs found something to tie him with. At trial, Fuller denied holding the cord, but her earlier statement admitted this act. Chairs then told Fuller to look for anything of value on the first floor. Fuller rummaged through Price's belongings and found some liquor. She wiped her fingerprints from areas where she had touched, and went upstairs, where she observed Chairs placing a gag on the bound Price. Fuller and Chairs then left in Price's car, taking the liquor and a sum of money exceeding $300, much of it in coins.

The pair stopped to buy narcotics, and abandoned Price's car. Chairs informed her that he would exchange the coins for bills the next day at a bank.

At trial, the State offered the testimony of an employee of the Bensenville Bank, relating that on August 17, 1977, Amos Chairs opened an account, deposited $333.64, and then immediately withdrew all but $100. Chairs' passbook from this bank, supplied to the police by Chairs' wife, was also offered as evidence. Luther Price's car was later found in the vicinity where defendant Fuller said they had abandoned it.

I.

■■ Defendant Fuller's first contention on appeal is that the trial court erred in denying her motion to suppress her post-arrest statement. Defendant Fuller concedes that she was given the *Miranda* warnings; she contends that her waiver of the right to remain silent was ineffective because it was not a knowing and intelligent waiver, owing to her intoxicated condition at the time of her arrest and thereafter. While it is true that an arrestee's intoxicated condition can render a waiver ineffective (see *People v. Roy* (1971), 49 Ill. 2d 113, 115-16, 273 N.E.2d 363), the question of whether Fuller's waiver was truly voluntary was an issue for the trial court, and its findings will not be disturbed on appeal unless they are contrary to the manifest weight of the evidence. (*People v. Higgins* (1972), 50 Ill. 2d 221, 225, 278 N.E.2d 68, *cert. denied* (1972), 409 U.S. 855, 34 L. Ed. 2d 100, 93 S. Ct. 195.) Two witnesses (Bailey and Mallettle)· testified to Fuller's intoxication at the time of her arrest. Three police officers and an assistant state's attorney testified; each denied seeing objective signs of intoxication. Such contradictory evidence is best resolved by the trial court. (See *People v. Scott* (1948), 401 Ill. 80, 84, 81 N.E.2d 426.) Under the circumstances, there is no reason to believe that its resolution was contrary to the manifest weight of the evidence.

■■ Defendant Fuller attempts to attach some importance to the fact that no officer asked Fuller if she was intoxicated or took steps to evaluate her objective capacity to waive her rights. We can find no authority to support any requirement that police evaluate the capacity of those waiving their *Miranda* rights. On the contrary, our supreme court has held that the question of voluntariness of a confession is one of evidentiary competence, and is properly a question for the trial court. (*Higgins*, at 225.) In the instant case, the question was properly presented to the trial court at the hearing on the motion to suppress.

Defendant Fuller would also have this court endorse a rule that no waiver is "knowing and intelligent" (see *Miranda v. Arizona* (1966), 384 U.S. 436, 475, 16 L. Ed. 2d 694, 724, 86 S. Ct. 1602, 1628), unless the

arrestee knows the ramifications of his waiver. *Miranda* requires that an arrestee know that he has a right to refuse to incriminate himself (see *Miranda*, at 475); it has not been construed to require that an arrestee know the difference between inculpatory and exculpatory voluntary statements.

■■ Defendant Fuller's next contention on appeal is that the trial court erred in denying a jury instruction on involuntary manslaughter. In taking this position, defendant asserts that she was voluntarily intoxicated at the time of the crime, and therefore may have acted with recklessness, but not with the intent necessary to commit murder. This argument misconstrues some basic principles of law. Although voluntary intoxication can be a defense, its effect is to negate a defendant's mental state insofar as a mental state is an element of the offense charged. (Ill. Rev. Stat. 1979, ch. 38, par. 6—3.) The degree of intoxication must be "so extreme that it entirely suspends the power of reason." (*People v. Huggy* (1974), 19 Ill. App. 3d 247, 252, 311 N.E.2d 355.) The statute makes no provision for a "diminished capacity" defense, whereby a state of intoxication that does not "entirely suspend the power of reason" acts to reduce the degree of an offense, *e.g.*, from murder to manslaughter. On the contrary, case law holds that voluntary intoxication is no defense unless it makes impossible the existence of a mental state that is an element of the crime. (*Huggy*, at 252.) In the case at bar, the jury was properly instructed as to the elements of the offenses of robbery and murder, and the defense of voluntary intoxication, and returned verdicts that are consistent with the evidence. Under the circumstances, there was no error in denying a jury instruction on involuntary manslaughter.

■■ Defendant Fuller also contends that certain remarks of the prosecutor were prejudicial and deprived her of a fair trial. On cross-examination of defendant Fuller, the prosecutor asked if she knew that Verna Harris was a prostitute. His next question was, "Well, what profession had you been practicing for the past few years?" There can be little doubt that the prosecutor intended to imply that Fuller was a prostitute, an implication unsupported by any evidence. While it is impermissible to allege that a defendant is a habitual criminal or that his profession is crime (*People v. Natoli* (1979), 70 Ill. App. 3d 131, 136, 387 N.E.2d 1096), the reference made here was not of that gravity. Although prostitution may be illegal, it is unrelated to the acts charged. Furthermore, defense counsel made an immediate objection to the question, and the trial court instructed the jury to disregard the comment. Under these circumstances, the remark does not constitute reversible error. See *People v. Addison* (1977), 56 Ill. App. 3d 92, 100, 371 N.E.2d 1025.

■■■ The other remarks defendant objects to were made in the prose-

cutor's closing arguments. Defendant did not object to those remarks at the time, however, and has thus not preserved the question for review. (*People v. Ortiz* (1976), 44 Ill. App. 3d 124, 130, 357 N.E.2d 1270.) Even if this error has not been waived, the statements do not manifest prejudice sufficient to constitute reversible error. The first statement was made while the prosecutor recounted the defendants' actions after leaving Price's apartment: "[They] take the savings of Mr. Price, and buy dope, heroin." In her oral post-arrest statement, defendant Fuller stated that they had gone to the "dope house" and bought some narcotics. While not condoning any looseness in summations of the evidence, we find little prejudice in calling an illegally purchased narcotic "heroin," even where the substance was never identified in the testimony. Reversal of a conviction is not warranted unless the statement has caused substantial prejudice to the defendant. *People v. Davis* (1976), 38 Ill. App. 3d 411, 418, 347 N.E.2d 818.

■■ The other remark was made when the prosecutor, in explaining why the cord and towel used to tie and gag the victim could not be taken into the jury room, said, "The cord and towel still reek with Mr. Price's fluids." Defendant Fuller characterizes this as a blatant attempt to appeal to the prejudices of the jury, but the jury was already aware of the brutality of the crime and the repulsive nature of the evidence. The prosecution had introduced photographs of the body, testimony of the fact of decomposition, and testimony that the floor surrounding the body was soaked with bodily fluids. In view of the nature of the evidence, the comment was not so prejudicial as to warrant reversal.

Defendant Fuller's final contention is that the evidence was insufficient to convict her of robbery and murder. With respect to murder, defendant relies on the premise that the victim may have died before she entered the bedroom and involved herself in Amos Chairs' actions. There was ample evidence from which the jury could find that Price was still alive at that time: the fact that Chairs found it necessary to tie and gag the victim; the fact that Chairs held Price down while Fuller took money from his pocket; Fuller's description of the victim losing control of his bladder and bowels in her presence. Defendant Fuller's claim that no robbery occurred if the taking of Price's property was an afterthought, and occurred after his death, is similarly unsupported by the evidence. From the facts recited by defendant Fuller, the jury was fully justified in concluding that Fuller joined a murder in progress and therefore was liable under the accountability statute (Ill. Rev. Stat. 1979, ch. 38, par. 5—2); that Fuller took Price's property by force, and was therefore guilty of robbery and liable for Price's death under the felony murder doctrine (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(3)); and that her defenses of

compulsion and voluntary intoxication were inadequately supported by the evidence.

## II.

Defendant Chairs' appeal poses a similar question on the weight of the evidence. Defendant Chairs was found guilty after a bench trial in which defendant Fuller's statement implicating Chairs was not admitted into evidence. Defendant Chairs contends that the evidence presented was insufficient to warrant a finding of guilt beyond a reasonable doubt. The prosecution offered three theories of Chairs' guilt. Since Chairs admitted taking Price's car and property, he was charged with robbery and could be liable for the victim's death under the felony murder doctrine. Alternatively, Chairs' involvement with Zulina Fuller's alleged acts could support a guilty finding on an accountability theory. Finally, if the trier of fact disbelieved Chairs' exculpatory statement, he could be found guilty of direct involvement in Price's murder.

■■ Liability under the accountability theory requires that the defendant, before or during the commission of an offense by another, aids or abets that other person. (Ill. Rev. Stat. 1979, ch. 38, par. 5—2.) A guilty finding under this theory need not rely on the defendant's overt act of assistance; the factfinder can properly infer the defendant's support from his approving presence at the scene of the crime. (*People v. Crutcher* (1979), 72 Ill. App. 3d 239, 243, 390 N.E.2d 571.) Additionally, the defendant's assistance *during* the crime can be inferred from his acts performed with the other party *after* the commission of the crime. *Crutcher*, at 244.

■■ Liability under the felony murder doctrine requires that the victim be killed in the attempt or commission of a forcible felony. (Ill. Rev. Stat. 1979, ch. 38, par. 9—1(a)(3).) Robbery is a forcible felony (Ill. Rev. Stat. 1979, ch. 38, par. 2—8), and defendant Chairs' admission that he took the victim's car and other property support a finding of robbery. The defendant needn't have been physically present during the killing to be liable under this doctrine. (*People v. Johnson* (1973), 55 Ill. 2d 62, 68, 302 N.E.2d 20.) Chairs is liable for the acts of another if the other's acts proximately cause a death during the commission of a felony to which Chairs was a party. (See *People v. Brown* (1979), 70 Ill. App. 3d 922, 925, 388 N.E.2d 1253.) Defendant Chairs argues that the felony murder doctrine is inapplicable, because, even if Price was alive when Chairs came on the scene, Chairs joined in Zulina Fuller's criminal activity after the "death blow" had been struck. We find this distinction unhelpful to Chairs. The felony murder doctrine establishes culpability for deaths that are foreseeable consequences of criminal acts. (See *Brown*, at 925-26.) When Chairs came upon the bound and gagged victim, Price's death was

certainly a foreseeable event, and Chairs' election to join in the robbery bound him to the consequences of that robbery. Felony murder is usually evidenced by the defendant's participation in criminal events leading up to the fatal blow, but evidence of the defendant's subsequent conduct is competent to prove participation in the felony. (*People v. Kolep* (1963), 29 Ill. 2d 116, 120, 193 N.E.2d 753.) If a defendant is present at the scene of a crime without opposing or disapproving the acts, the trier of fact can, in consideration of all the circumstances, infer that he has consented to those acts, and has aided and abetted them. *Kolep*, at 120.

■■ All three of the prosecution's theories require a factual conclusion that Price was still alive when defendant Chairs first encountered him. It was within the province of the trier of fact to make this finding beyond a reasonable doubt. Sufficient evidence supports the trial court's finding of guilty: defendant Chairs admitted his presence at the scene; he admitted taking the victim's car and other property; on the following day, Chairs banked a sum similar to the amount taken from Price; Chairs' first statement to police was an admittedly untrue accusation of innocent parties; Chairs' second exculpatory statement lacked credibility, since it maintained that Zulina Fuller tied and gagged the victim without assistance. The trier of fact need not accept or reject a defendant's statement *in toto*; he can weigh the veracity of each portion of a statement. (*People v. Carter* (1978), 57 Ill. App. 3d 84, 87, 372 N.E.2d 1093.) If a defendant's story puts him near the scene of a crime, the story must be credible, or the defendant will be judged by its improbabilities. *People v. Davis* (1977), 54 Ill. App. 3d 517, 524, 369 N.E.2d 1376.

■■ Defendant Chairs' second contention on appeal needs little discussion. Defendant argues that his sentence must be vacated and the case remanded for resentencing because the trial court failed to determine that the defendant knew the difference between the "old" and "new" sentencing acts. (See Ill. Rev. Stat. 1979, ch. 38, par. 1008—2—4(b).) Although the trial court must offer the defendant his choice of sentencing provisions (*People v. Smith* (1979), 74 Ill. App. 3d 796, 798, 394 N.E.2d 53), this court has held that the trial court is not obligated to explain the sentencing choice to the defendant, as that is the defense attorney's function. (*People v. Tolefree* (1980), 85 Ill. App. 3d 844, 849, 407 N.E.2d 604.) Defendant Chairs has raised no claim of incompetence of counsel, and we will not presume that defense counsel has failed to discharge his responsibilities.

Accordingly, the judgments of the trial court are affirmed.

Affirmed.

DOWNING and HARTMAN, JJ., concur.